

1 | **FARUQI & FARUQI, LLP**
David E. Bower SBN 119546
2 | Vahn Alexander SBN 167373
Christopher B. Hayes SBN 277000
3 | 10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
4 | Telephone: (424) 256-2884
Facsimile: (424) 256-2885
5 | Email: dbower@faruqilaw.com

6 | *Attorneys for Plaintiff*

FILED

MAY 25 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

FILE VIA FAX

7 | ## UNITED STATES DISTRICT COURT

8 | ## NORTHERN DISTRICT OF CALIFORNIA

9 |

**CV 12 2721**

LHK
PSG

10 | IRENE DIXON, On Behalf of Herself and All Other
Similarly Situated,

Case Number

Plaintiff,

11 |

12 | v.
COST PLUS, INC., JOSEPH H. COULOMBE,
13 | CLIFFORD J. EINSTEIN, BARRY J. FELD, DANNY
W. GURR, JOHN C. POUND, KIM D. ROBBINS,
14 | FREDRIC M. ROBERTS, KENNETH T. STEVENS,
BED BATH & BEYOND INC., and BLUE CORAL
15 | ACQUISITION CORP.

Defendants.

**CLASS ACTION
COMPLAINT FOR BREACH
OF FIDUCIARY DUTY AND
INDIVIDUAL CLAIMS FOR
VIOLATION OF SECTIONS
14(d) 4 and (e) AND 20 (a) OF
THE SECURITIES
EXCHANGE ACT OF 1934**

16 |

17 |        Plaintiff Irene Dixon ("Plaintiff"), on behalf of herself and all others similarly situated, by

18 | her attorneys, alleges the following upon information and belief, except as to those allegations

19 | pertaining to Plaintiff which are alleged upon personal knowledge.

20 |

21 | ## INTRODUCTION

22 |        1.        This is a shareholder class action complaint on behalf of the holders of the common

23 | stock Cost Plus, Inc. ("Cost Plus" or the "Company") against certain officers and/or directors of

24 | Cost Plus (the "Board"), and other persons and entities involved in a proposed transaction through

25 | which the Company will merge with Bed Bath & Beyond Inc. ("Bed Bath & Beyond") for

26 | inadequate consideration.

27 |

28 |

- 1 -
COMPLAINT

2.     On May 9, 2012, Cost Plus issued a press release announcing that it had entered into a definitive merger agreement with Bed Bath & Beyond to acquire Cost Plus, via a tender offer made by Bed Bath & Beyond's wholly-owned subsidiary Blue Coral Acquisition Corp. ("Merger Sub"), in a deal valued at approximately $554 million. Under the terms of the Proposed Transaction (as defined below), Cost Plus common shareholders will receive $22.00 per share in cash for each Cost Plus share they own.

3.     Specifically, pursuant to the Agreement and Plan of Merger dated May 8, 2012 ("Merger Agreement") entered into between Cost Plus, Bed Bath & Beyond, and Merger Sub, Bed Bath & Beyond announced that Merger Sub would commence a cash tender offer (the "Tender Offer") to purchase all outstanding shares of Cost Plus common stock at a purchase price of $22.00 per share in cash, to be followed by a merger of Merger Sub with and into the Company.

4.     On May 25, 2012, the Tender Offer commenced and is set to expire on June 28, 2012. If Merger Sub acquires 90% or more of the outstanding shares pursuant to the Tender Offer, including following the exercise of a Top-Up Option, then Bed Bath & Beyond will consummate the Merger in a second-step merger without a vote or any further action by the holders of shares (collectively the Tender Offer, the Top-Up Option, and the second-step merger are referred to herein as the "Proposed Transaction").

5.     Concurrently with the execution of the Merger Agreement, affiliates of Red Mountain Capital Partners LLC and Stephens Investments Holdings LLC (the two largest shareholders of the Company) have entered into support and tender agreements (the "Support Agreements") with Bed Bath & Beyond and Merger Sub whereby such shareholders have committed to tender shares equaling 26% of the Company's total outstanding Shares.

6.     As discussed below, both the consideration to Cost Plus common shareholders contemplated in the Proposed Transaction and the process by which Defendants propose to

1   consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common

2   shareholders of the Company. The Individual Defendants' (as defined herein) conduct constitutes a

3   breach of their fiduciary duties owed to Cost Plus common shareholders, and a violation of

4   applicable legal standards governing the Individual Defendants' conduct.

5         7.     The Board agreed to sell Cost Plus to Bed Bath & Beyond without making any

6   attempt to shop the Company with any third parties, and further protected the deal by agreeing to a

7   no-shop provision and a sizable termination fee. In 2010, Cost Plus and Bed Bath & Beyond

8   embarked upon a strategic relationship in which Bed Bath & Beyond ultimately opened four

9   "World Market" stores within existing Bed Bath & Beyond locations. Pursuant to this relationship,

10  Cost Plus provided Bed Bath & Beyond with product and merchandising support and access to

11  confidential information regarding the Company. On February 2, 2012, after the "World Market"

12  store-within-Bed Bath & Beyond-stores concept had met with success, both in terms of customer

13  reaction and sales performance, Bed Bath & Beyond raised the possibility of it acquiring Cost Plus.

14  The Board agreed to negotiate exclusively with Bed Bath & Beyond, rather than shop the Company,

15  and ultimately agreed to sell the Company for a mere 50 cents above Bed Bath & Beyond's initial

16  offer price of $21.50. The Board then locked up this deal by agreeing to a no-shop provision and a

17  substantial termination fee in the amount of $16.25 million (approximately 2.97% of the deal value)

18  that would discourage any topping bidders from coming forward.

19        8.     Further, on May 25, 2012, the Company filed a Schedule 14D-9 Recommendation

20  Statement (the "Recommendation Statement") with the Securities and Exchange Commission

21  ("SEC") in connection with the Proposed Transaction. The Recommendation Statement fails to

22  provide the Company's shareholders with material information and provides them with materially

23  misleading information thereby rendering the shareholders unable to make an informed decision

24  regarding whether to tender their shares in support of the Proposed Transaction.

28

9.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of loyalty, good faith, and due care.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C §1331 in that Plaintiff's claims arise in part under the Constitution and laws of the United States, including the Exchange Act [15 U.S.C. §78aa] and 28 U.S.C. §1331.   This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

11.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and the defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Given that the Proposed Transaction is valued at approximately $554 million, the injunctive relief sought herein will exceed a sum or value of $75,000.  This action is not a collusive one to confer jurisdiction on this Court.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Cost Plus is incorporated in California and is therefore a resident of this District.

## PARTIES

13.     Plaintiff currently holds shares of common stock of Cost Plus and has held such shares at all relevant times.  Plaintiff is a citizen of New York.

14.     Defendant Cost Plus, Inc. is a California corporation with its principal executive offices located at 200 4th Street, Oakland, CA 94607. Cost Plus is a specialty retailer of casual home furnishings and entertaining products in the United States.  As of January 29, 2011, the Company operated 263 stores under the name World Market, Cost Plus World Market, Cost Plus Imports, and World Market Stores in 30 states.  The Company services its stores from its distribution centers

located in Stockton, California and Windsor, Virginia.  Shares of Cost Plus trade on NASDAQ under the ticker symbol "CPWM."

15.     Defendant Joseph H. Coulombe ("Coulombe") has served as a member of the Board since 1995. Coulombe is a citizen of Florida.

16.     Defendant Clifford J. Einstein ("Einstein") has served as a member of the Board since 2007. Einstein is a citizen of California.

17.     Defendant Barry J. Feld ("Feld") has served as President of the Company since August 1999 and as Chief Executive Officer of the Company since October 2005. He has served as a member of the Board since 2001. Feld is a citizen of North Carolina.

18.     Defendant Mark R. Genender ("Genender") has served as a member of the Board since 2011. Genender is a citizen of California.

19.     Defendant Danny W. Gurr ("Gurr") has served as a member of the Board since 2005. Gurr is a citizen of Florida.

20.     Defendant John C. Pound ("Pound") has served as a member of the Board since 2011. Pound is a citizen of California.

21.     Defendant Kim D. Robbins ("Robbins") has served as a member of the Board since 1999. Robbins is a citizen of California.

22.     Defendant Fredric M. Roberts ("Roberts") has served as a member of the Board since 2010. Roberts is a citizen of California.

23.     Kenneth T. Stevens ("Stevens") has served as Non-Executive Independent Chairman of the Board since June 2011. Stevens is a citizen of California.

24.     Defendants Coulombe, Einstein, Feld, Genender, Gurr, Pound, Robbins, Roberts and Stevens are collectively referred to hereinafter as the "Individual Defendants."

25.     Defendant Bed Bath & Beyond Inc. is a New York corporation with its principal executive offices located at 650 Liberty Avenue, Union, New Jersey 07083. Bed Bath & Beyond Inc. is a chain of retail sore, operating under the names Bed Bath & Beyond, Christmas Tree hops, Harmon and Harmon Face Values, and buybuy BABY. In addition, Bed Bath & Beyond is a partner in a joint venture, which operates two stores in the Mexico City market under the name Home & More. Bed Bath & Beyond sells a range of domestics merchandise and home furnishings in 1773 stores are located in 50 states, the District of Columbia, Puerto Rico and Canada. Shares of Bed Bath & Beyond common stock trade on NASDAQ under the ticker symbol "BBBY."

26.     Defendant Blue Coral Acquisition Corp. is a California corporation with an address at c/o Bed Bath & Beyond Inc., 650 Liberty Avenue, Union, New Jersey 07083. Blue Coral Acquisition Corp is an indirect wholly-owned subsidiary of Bed Bath & Beyond Inc. formed solely for the purpose of consummating the Proposed Transaction (the Individual Defendants, Cost Plus, Bed Bath & Beyond, and Merger Sub are collectively referred to as "Defendants").

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES UNDER STATE LAW

27.     By reason of the Individual Defendants' positions with the Company as directors, said individuals are in a fiduciary relationship with Plaintiff and the other public shareholders of Cost Plus (the "Class") and owe Plaintiff and the other members of the Class the duties of good faith, fair dealing, loyalty and full and complete disclosure.

28.     By virtue of their positions as directors of Cost Plus, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Cost Plus to engage in the practices complained of herein.

29.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's shareholders and with due care. In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control,

- 6 -
COMPLAINT

the directors must take all steps reasonably required to maximize the value shareholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the shareholders to make an informed decision. To diligently comply with this duty, the directors of a corporation may not take any action that:

      (a)    adversely affects the value provided to the corporation's shareholders;

      (b)    contractually prohibits them from complying with or carrying out their fiduciary duties;

      (c)    discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

      (d)    will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders.

      30.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Cost Plus, are obligated under applicable law to refrain from:

      (a)    participating in any transaction where the directors' or officers' loyalties are divided;

      (b)    participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

      (c)    unjustly enriching themselves at the expense or to the detriment of the public shareholders.

      31.    The Individual Defendants are also obliged to honor their duty of candor to Cost Plus's shareholders by, *inter alia*, providing all material information to the shareholders regarding a situation in which they are asked to vote or tender their shares in favor of a proposed merger. This duty of candor ensures that the Company's shareholders have all information that will enable them

1  to make informed, rational and intelligent decisions as to whether to relinquish their ownership in
2  Cost Plus for the consideration offered.

3      32.    Plaintiff alleges herein that the Individual Defendants, separately and together, in
4  connection with the Proposed Transaction, violated duties owed to Plaintiff and the other public
5  shareholders of Cost Plus, including their duties of loyalty, good faith and independence, insofar as
6  they, *inter alia*, engaged in self-dealing and obtained for themselves personal benefits, including
7  personal financial benefits, not shared equally by Plaintiff or the public shareholders of Cost Plus
8
9  common stock.

10  **CLASS ACTION ALLEGATIONS**

11      33.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil
12  Procedure, individually and on behalf of the Class. The Class specifically excludes Defendants
13  herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of
14  the Defendants.
15

16      34.    This action is properly maintainable as a class action.

17      35.    The Class is so numerous that joinder of all members is impracticable. As of April
18  6, 2012, Cost Plus had in excess of 22 million shares of common stock outstanding. Members of
19  the Class are scattered throughout the United States and are so numerous that it is impracticable to
20  bring them all before this Court.

21      36.    Questions of law and fact exist that are common to the Class, including, among
22  others:
23

24      (a)    whether the Individual Defendants have breached their fiduciary duties of
25  good faith, loyalty, independence or due care with respect to Plaintiff and the other members of the
26  Class in connection with the Proposed Transaction;

27

28                 - 8 -

(b)     whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(c)     whether the Individual Defendants have breached their fiduciary duty of candor to Plaintiff and the other members of the Class in connection with the Proposed Transaction by failing to disclose to shareholders all material information upon which they are able to make an informed decision about whether to tender their shares;

(d)     whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

(e)     whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated and

(f)     whether Bed Bath & Beyond and Cost Plus are aiding and abetting the wrongful acts of the Individual Defendants.

37.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

38.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the

interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

39. Preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate because Defendants have acted, or refused to act, or grounds generally applicable and causing injury to the Class.

## SUBSTANTIVE ALLEGATIONS

### A. Background

40. Cost Plus is a leading specialty retailer of casual home furnishings and entertaining products. As of January 28, 2012, the Company operated 258 stores in 30 states. The stores feature an ever-changing selection of casual home furnishings, housewares, gifts, decorative accessories, gourmet foods and beverages offered at competitive prices and imported from more than 50 countries. Many items are unique and exclusive to Cost Plus World Market. The value, breadth and continual refreshment of products invites customers to come back throughout a lifetime of changing home furnishings and entertaining needs.

41. Cost Plus has demonstrated impressive growth potential by posting two consecutive years of profitability. According to the Company's Annual Report for the fiscal year ended January 28, 2012, net sales for fiscal 2011 increased 5.2% to $963.8 million from $916.6 million for fiscal 2010, while comparable store sales for fiscal 2011 increased 5.4% compared to a 7.2% increase in fiscal 2010. Net income in fiscal 2011 was $16.5 million, or $0.71 per diluted share, versus net income in fiscal 2010 of $2.9 million, or $0.13 per diluted share, marking two consecutive years of profitability for the Company. The increase in profitability for fiscal 2011 is due to higher gross profit from increased sales, consistent merchandise margin, and leverage on occupancy costs and selling, general, and administrative (SG&A) expenses from higher sales.

### B. The Proposed Transaction

42. On May 9, 2012, Cost Plus and Bed Bath & Beyond issued a joint press release announcing that they had entered into the Merger Agreement. Under the terms of the Proposed Transaction, Bed Bath & Beyond would acquire Cost Plus by making the cash Tender Offer to acquire all of the outstanding shares of common stock of Cost Plus at a purchase price of just $22.00 per share.

43. The press release stated in relevant part:

> UNION, New Jersey and OAKLAND, California, May 9, 2012 --- **Bed Bath & Beyond Inc.** (NASDAQ: BBBY) and **Cost Plus, Inc.** (NASDAQ: CPWM) today jointly announced that they have entered into a definitive agreement under which Bed Bath & Beyond Inc. will acquire Cost Plus, Inc. in an all cash transaction. Bed Bath & Beyond Inc. has agreed to make a cash tender offer for all outstanding shares of Cost Plus, Inc. common stock at a price of $22 per share, followed by a merger in which all shareholders that have not tendered would receive the same consideration.

> The Boards of Directors of both companies have unanimously approved the terms of the transaction. A special committee of the Cost Plus, Inc. Board of Directors also recommended the transaction following receipt of a fairness opinion from its financial advisor. In addition, Bed Bath & Beyond Inc. has entered into agreements with Red Mountain Capital Partners LLC and Stephens Investment Holdings LLC, the two largest shareholders of Cost Plus, Inc. pursuant to which each shareholder has committed to tender all of their shares, which in aggregate comprise approximately a 26% interest in Cost Plus, Inc., into the offer, subject to certain conditions.

> "We are thrilled about the prospects of welcoming the Cost Plus team and their customers and vendors to the Bed Bath & Beyond family," said Steven H. Temares, Chief Executive Officer and member of the Board of Directors of Bed Bath & Beyond Inc. "Through the combination of the highly talented Cost Plus organization with our own dedicated associates, we expect to be able to do even more for, and with, our collective customers," he added.

> Barry J. Feld, Chief Executive Officer of Cost Plus, Inc., stated: "We are pleased that this transaction will offer immediate and compelling value to our shareholders as well as exciting new opportunities to the thousands of people who have helped transform our business and drive its continuing growth and momentum. Our successful merchandising and product collaborations over the last two years have demonstrated that our organizations work well together and that we can make key contributions to the continued success of the combined company."

> The acquisition is expected to close during Bed Bath & Beyond Inc.'s fiscal second quarter. It is also expected to be slightly accretive to Bed Bath & Beyond Inc.'s net earnings per diluted share for fiscal 2012, after transaction and integration costs. Bed Bath & Beyond Inc. continues to model a high single digit to a low double digit percentage increase in net earnings per diluted share in fiscal 2012.

> The consummation of the transaction is not subject to financing and will be funded by Bed Bath & Beyond Inc. with available cash. Bed Bath & Beyond Inc. continues

to model completion of its current share repurchase authorization by the end of fiscal 2012, which may be influenced by several factors, including business and market conditions.

The tender offer is conditioned upon, among other things, expiration of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvement Act of 1976, as amended, the satisfaction of a minimum tender condition that the holders of 90% of Cost Plus, Inc.'s outstanding shares (as increased by the number of shares issuable under stock plans and the top-up referred to below) tender and not withdraw their shares, and other customary conditions. Bed Bath & Beyond Inc. has the right to acquire additional, newly issued shares of Cost Plus, Inc. under a top-up right if necessary to meet the minimum tender condition. In the event the minimum tender or other conditions are not met, the parties have agreed to complete the transaction through a one-step merger, subject to receipt of shareholder approval. Pursuant to the agreements described above, Red Mountain and Stephens have also committed to vote all of their shares in favor of a merger, subject to certain conditions.

Goldman, Sachs & Co. is acting as financial advisor to and Proskauer Rose LLP as legal advisor to Bed Bath & Beyond Inc. Peter J. Solomon Company is acting as financial advisor to and Skadden, Arps, Slate, Meagher & Flom LLP as legal advisor to Cost Plus, Inc.

44.     The consideration offered to Cost Plus's public stockholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Cost Plus's common stock is materially in excess of the amount offered for those securities in the proposed acquisition given the Company's prospects for future growth and earnings.

45.     The Proposed Transaction price also fails to take into consideration considerable synergies Bed Bath & Beyond can attain through the acquisition.

46.     Thus, while it appears that Bed Bath & Beyond will benefit from the synergies from the Proposed Transaction, Cost Plus's shareholders will receive insufficient consideration for their shares to their detriment.

## C.     The Preclusive Deal Protection Devices

47.     On May 10, 2012, the Company filed a Form 8-K with the SEC wherein it disclosed the terms of the Merger Agreement. To the detriment of Cost Plus shareholders, the Individual Defendants agreed in the Merger Agreement to certain onerous and preclusive deal protection

1    devices that will prevent superior proposals to acquire the common stock of the Company from

2    emerging.

3        48.    Section 5.02 of the Merger Agreement is a restrictive no-shop provision that

4    prohibits the members of the Board from taking any affirmative action to comply with their

5    fiduciary duties to maximize shareholder value, including soliciting proposals relating to alternative

6    tender offers or business combinations.

7
        49.    The Merger Agreement also includes a strict "standstill" provision which prohibits,
8
     except under extremely limited circumstances, the Individual Defendants from engaging in
9
10   discussions or negotiations relating to proposals regarding alternative tender offers or business

11   combinations.

12       50.    Section 5.02(b) of the Merger Agreement provides a limited situation in which the

13   Cost Plus Board may enter into discussions and negotiations in response to an unsolicited

14
     competing bid: after receiving a written Competing Proposal and the Board "determines in good
15
     faith (after consultation with outside legal and financial advisors), [it] constitutes or would
16
17   reasonably be expected to result in a Superior Proposal." Even then, however, the Cost Plus Board

18   is required to provide Bed Bath & Beyond with written notice at least three business days in

19   advance of its intention to terminate the Merger Agreement and enter into a definitive agreement

20   with respect to a "Superior Proposal." The Board is also required to negotiate with Bed Bath &

21
     Beyond during those three business days to allow Bed Bath & Beyond to adjust the terms and
22
     conditions of the Merger Agreement so that the Competing Proposal ceases to be a Superior
23
24   Proposal.

25       51.    Thus, even if the Cost Plus Board receives a competing bid that appeared to be

26   "superior" to Bed Bath & Beyond's offer, they are precluded from entering into discussions and

27   negotiations unless they first reasonably determine in good faith that the alternative proposal is, in

28                                          - 13 -

fact, "superior" or could reasonably be expected to lead to a "Superior Proposal." Consequently, this provision prevents the Cost Plus Board from exercising thei. fiduciary duties and precludes an investigation into competing proposals unless, as a prerequisite, t 1e majority of the Cost Plus Board first determines that the proposal is "superior" " or reasonabl. could be expected to lead to a "Superior Proposal."

52. In addition, the Merger Agreement provides that Cost Plus must pay to Bed Bath & Beyond a termination fee of $16.25 million, representing 2.97% of the approximate deal value of $554 million, if the Company decides to pursue another offer, th reby essentially requiring that the alternate bidder agree to pay a naked premium for the right tc provide the shareholders with a superior offer. A termination fee in the amount of 2.97% is unreasonably high for this type of transaction.

53. Further, concurrently with the execution of the Merger Agreement, affiliates of Red Mountain Capital Partners LLC and Stephens Investments Holdings LLC (the two largest shareholders of the Company) have entered into the Support Agreements with Bed Bath & Beyond and Merger Sub whereby such shareholders have committed to tender shares equaling 26% of the Company's total outstanding Shares.

54. Ultimately, these preclusive deal protection devices illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited alternative acquisition proposal that constitutes, or vould reasonably be expected to constitute, a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions will foreclose the new bidder from providing the needed market check of Bed Bath & Beyond's inadequate offer.

**D.    The Materially Misleading And/or Incomplete Disclosure Documents**

- 14 -

55.     On May 25, 2012, Cost Plus filed its Recommendation Statement with the SEC.

56.     The Recommendation Statement fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision on whether to tender their shares in support of the Proposed Transaction.

57.     In fact, the Recommendation Statement completely fails to disclose all of the underlying methodologies, projections, key inputs and multiples relied upon and observed by Peter J. Solomon Company ("PJSC"), which served as a financial advisor to the Company in connection with the Proposed Transaction, which are necessary for shareholders to evaluate and properly assess the credibility of the various analyses performed by PJSC and relied upon by the Board in recommending the Proposed Transaction.

58.     In particular, the Proxy is deficient and should provide, *inter alia,* the following information in connection with PJSC financial analysis:

(a) In the *Analysis of Selected Publicly Traded Comparable Companies,* the Company should disclose: the specific (i) the criteria for selecting the companies used in the analysis, (ii) the multiples used and multiples observed for each of the selected companies; and (iii) description of the criteria used to select the reference range and the reference range used;

(b)     In the *Analysis of Selected Precedent Transactions* the Company should disclose: (i) the criteria for selecting the transactions used in the analysis, (ii) the dates of the transactions used in the analysis, (iii) the multiples observed for each of the selected transactions and implied per share values; and (ii) the structure or type of the transaction reviewed (*i.e.* cash v. stock for stock deal or hybrid); and

(c) In the *Discounted Cash Flow Analysis,* the Company should disclose: (i) the rationale for selecting discount rates ranges of 10.5% to 12.5%; (ii) the rationale for selecting the

- 15 -

1  terminal multiples range of 7.0 to 9.0x in the analysis; (iii) whether NOL(s) were part of the

2  analysis; (iv) the Company's weighted average cost of capital ("WACC"), the key inputs used to

3  calculate the Company's WACC;

4    59.    Moreover, while the 14D-9 discloses certain Company projections at page 31, it fails

5  to disclose the key inputs necessary to determine the Company's free cash flows, which are critical

6  to understanding the basis for those projections.

7    60.    Furthermore, additional information regarding the sales process leading to the

8

9  Proposed Transaction should be disclosed, including the following:

10        (a)    The identities of the parties other than Bed Bath & Beyond that were

11  approached by PJSC in October of 2009 in connection with a possible strategic equity investment in

12  the Company or potential strategic partnerships, and the response of each of those parties to that

13  approach;

14        (b)    Whether Mr. Feld discussed potential employment at Bed Bath & Beyond at

15  his February 2, 2012 meeting with Mr. Temares and Mr. Castagna;

16

17        (c)    The Board's rationale for resolving to form a special committee to consider

18  the Company's strategic alternatives, and what the special committee was authorized to do;

19        (d)    The identities of the members of the Board that were chosen to serve on the

20  special committee;

21        (e)    Whether Mr. Feld, Ms. Baughman, and Mr. Turner discussed potential

22  employment at Bed Bath & Beyond at their April 11, 2012 and April 12, 2012 meetings with Mr.

23  Temares and Mr. Castagna;

24

25        (f)    The price range that the Board indicated at the April 29, 2012 Board meeting

26  would be sufficient for it to support a transaction;

27

28                                - 16 -

(g)     The content of the Special Committee s discussion on May 1, 2012, regarding the value of the potential transaction, the possible interest of any third party to acquire the Company at a purchase price in excess of $22.00 per share, the risks and opportunities associated with continuing as a standalone entity including the Company's strategic plan, the historical operating and financial results and the short-term and long-term outlook for the Company, as well as macroeconomic factors, and the potential negative impact to the Company's shareholders in the event the Company's growth strategy experienced any setbacks or delays.

(h)     Whether any of the Company's Named Executive Officers have entered into employment agreements with Bed Bath & Beyond;

(i)     And the content of the Board's discussion on May 8, 2012, regarding the risks and opportunities associated with the Company's standalone business plan, the risk adjusted value associated with Parent's proposal and certain of the material terms of Parent's proposal, including the reduction in the break-up fee and the fact that the tender offer must remain open a minimum of 50 calendar days after the date of the merger agreement which would permit any interested party to make a superior proposal.

61.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## FIRST CAUSE OF ACTION

**Claim for Violations of Section 14(d)(4) and 14(e) of the Exchange Against
Cost Plus and the Individual Defendants**

62.     Plaintiff repeats and realleges each allegation set forth herein.

63.     Cost Plus and the Individual Defendants have caused the Recommendation Statement to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

64. Sections 14(d)(4) and 14(e) of the Exchange Act require full and complete disclosure in connection with tender offers. Specifically, Section 14(e) provides that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

65. The Recommendation Statement violates Sections 14(d)(4) and 14(e) because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Cost Plus and the Individual Defendants should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

66. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## SECOND CAUSE OF ACTION

### On Behalf of Plaintiff for Violations of Section 20(a) of the Exchange Act Against the Individual Defendants

67. Plaintiff brings this Exchange Act claim on behalf of himself as an individual.

68. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

69. The Individual Defendants acted as controlling persons of Cost Plus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cost Plus, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation

- 18 -

COMPLAINT

Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

70.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

72.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

73.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

74.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

### THIRD CAUSE OF ACTION

#### Claim for Breach of Fiduciary Duties Against the Individual Defendants

75. Plaintiff repeats and realleges each allegation set forth herein.

76. The Individual Defendants have violated fiduciary duties of care, loyalty, disclosure and good faith owed to public shareholders of Cost Plus.

77. By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Cost Plus.

78. As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, disclosure and independence owed to the shareholders of Cost Plus because, among other reasons, they failed to take steps to maximize the value of Cost Plus to its public shareholders.

79. The Individual Defendants dominate and control the business and corporate affairs of Cost Plus, and are in possession of private corporate information concerning Cost Plus's assets, business and future prospects. Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Cost Plus which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing shareholder value.

80. By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

81. As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of

- 20 -

Cost Plus's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

82.  Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

83.  Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which the Individual Defendants' actions threaten to inflict.

## FOURTH CAUSE OF ACTION

### On Behalf of Plaintiff and the Class
### Against Bed Bath & Beyond and Merger Sub for Aiding and Abetting the
### Individual Defendants' Breach of Fiduciary Duty

84.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85.  Bed Bath & Beyond and Merger Sub have acted and are acting with knowledge of the fact that the Individual Defendants are in breach of their fiduciary duties to Cost Plus's public shareholders, and have participated in such breaches of fiduciary duties.

86.  Bed Bath & Beyond and Merger Sub knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein. In so doing, Bed Bath & Beyond and Merger Sub rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

87.  Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief in her favor and in favor of the Class and against Defendants as follows:

A. Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representatives;

B. Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain transaction providing the best possible terms for shareholders;

C. Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants' wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

Dated: May 25, 2012

FARUQI & FARUQI, LLP

DAVID E. BOWER
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024

**FARUQI & FARUQI, LLP**
Juan E. Monteverde, Esquire
369 Lexington Avenue, 10th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
*Counsel for Plaintiff*

- 22 -
COMPLAINT