UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IRENE DIXON, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br>  v.<br>COST PLUS, et al.,<br><br>      Defendants. | Case No.: 12-CV-02721-LHK<br><br>ORDER DENYING MOTION TO STRIKE; GRANTING MOTION TO INTERVENE; DENYING MOTION FOR PRELIMINARY INJUNCTION |

   Plaintiff Irene Dixon ("Plaintiff" or "Dixon") filed a motion for preliminary injunction on June 4, 2012 to enjoin a tender offer scheduled to expire on June 28, 2012, in connection with the planned sale of Cost Plus, Inc. ("Cost Plus") to Bed Bath & Beyond, Inc. ("Bed Bath & Beyond") (collectively "Defendants"). On June 8, 2012, Defendants filed an opposition, in which Bed Bath & Beyond joined. Plaintiff filed a reply in support of the preliminary injunction motion on June 11, 2012. Additionally, a putative intervenor in this action, Gary Ogurkiewicz ("Ogurkiewicz" or "Intervenor"), moved to intervene on June 7, 2012. Plaintiff filed an opposition to the motion to intervene on June 18, 2012. The Intervenor filed a reply in support of the motion to intervene on June 20, 2012.

   Ogurkiewicz was given the opportunity to file additional briefing in support of Plaintiff's motion for a preliminary injunction. The Intervenor filed a brief in support of the preliminary injunction on June 18, 2012. Defendants filed a response to the Intervenor's brief regarding the

1
Case No.: 12-CV-02721-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

preliminary injunction on June 20, 2012. The Intervenor filed a reply on June 21, 2012. A hearing was held on June 25, 2012, at which Plaintiff, Intervenor, and Defendants appeared. For the reasons explained below, Plaintiff's motion for a preliminary injunction is DENIED. Additionally, the Court GRANTS Ogurkiewicz's motion to intervene.[1] In light of the impending expiration of the tender offer and the parties' need for an expedited ruling, the Court will keep its analysis brief.

## I. BACKGROUND

Cost Plus, a California Corporation headquartered in Oakland, California, specializes in retail of casual home furnishings and entertaining products. Compl. ¶ 14. Bed Bath & Beyond, incorporated in New York and headquartered in Union, New Jersey, is a chain retail store that sells a range of domestics merchandise and home furnishings. Compl. ¶ 25. In 2010, Cost Plus and Bed Bath & Beyond formed a strategic partnership in which Bed Bath & Beyond opened four Cost Plus "World Market" stores within existing Bed Bath & Beyond stores. Compl. ¶ 7.

On February 2, 2012, after this "World Market" store-within-Bed Bath & Beyond store concept was met with success, Bed Bath & Beyond expressed interest in the possibility of acquiring Cost Plus. At the next regular meeting of the Cost Plus Board of Directors ("the Board"), Mr. Feld, who serves as Cost Plus's Chief Executive Officer and President, discussed Bed Bath and Beyond's interest with the rest of the Board. Mr. Feld is an employee of Cost Plus, while the eight other Board members are independent outside directors. Feld Decl. ¶ 3. The board created a special committee comprised of directors Genender, Pound, Roberts, and Stevens (the "Committee"). Feld Decl ¶ 11. The Board also engaged Peter J. Solomon Company ("PJSC"), an investment banking firm, as Cost Plus's financial advisor and further instructed Mr. Feld to engage in preliminary discussions with Bed Bath & Beyond. Feld Decl. ¶ 10.

On April 27, 2012, Bed Bath & beyond made an initial offer to purchase Cost Plus at $21.50 per share. Feld Decl. ¶ 13; Pound Dep. at 89:14-23. The Cost Plus Board debated

---

[1] Defendants also moved to strike the Declaration of David E. Bower in Support of Plaintiff's Motion for a Preliminary Injunction because the Bower Declaration did not adequately set forth the basis for the declarant's knowledge. ECF No. 28. Because the motion to strike is essentially an "evidentiary or procedural objection" to the preliminary injunction motion, it must be contained within the opposition brief and subject to the opposition brief's page limitations. *See* Civ. L. R. 7-3(a). Because Defendants' filed the motion to strike separately from the opposition, Defendants' motion to strike is DENIED. *See* Civ. L. R. 7-3(a).

2
Case No.: 12-CV-02721-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1    contacting potential bidders and concluded that doing so might put at risk the fully valued offer in
2    hand. Feld Decl. ¶ 15; Pound Decl. 0020 ¶¶6-9. The Committee agreed to proceed with the
3    transaction without a go-shop provision, but also required extending the tender offer period so that
4    it would not expire until 50 days following the execution of the merger agreement to provide for
5    additional time for possible competing third party offers. Schedule 14D-9 at 12, Bower Decl. Ex.
6    B. The Committee also negotiated to lower the termination fee to $16.25 million, approximately
7    2.97% of the equity value of the transaction. *Id*. Bed Bath & Beyond also agreed to eliminate the
8    fee payable to Bed Bath & Beyond if the Proposed Merger failed to obtain shareholder support,
9    and instead agreed to a capped expense reimbursement of up to $1.5 million. *Id*. On May 8, 2012,
10   the Cost Plus Board unanimously recommended approval of the Proposed Merger.
11         On May 9, 2012, Cost Plus and Bed Bath & Beyond issued a joint press release announcing
12   that they had entered into a merger agreement valued at approximately $554 million. Compl. ¶ 42,
13   52; *see* Leung Decl. Ex. 6. Under the terms of the merger, Cost Plus shareholders will receive $22
14   for each share of Cost Plus that they own. Compl. ¶ 7, 42.
15         On May 11, 2012, Gary Ogurkiewicz, a shareholder who owns over 45,000 shares of Cost
16   Plus stock, filed an action in California Superior Court alleging a California state law cause of
17   action for breach of fiduciary duty and aiding and abetting. Seaver Decl. Ex. A at 12-14.
18   Ogurkiewicz owns 0.2% of Cost Plus outstanding shares valued at approximately $1 Million. Mot.
19   to Intervene at 5.
20         On May 25, 2012, Cost Plus filed with the Securities and Exchange Commission, and
21   distributed to shareholders, a Schedule 14D-9 Recommendation Statement ("Recommendation
22   Statement") in connection with the proposed sale of Cost Plus to Bed Bath & Beyond. Compl. ¶ 8;
23   Bower Reply Decl. Ex. B. In the Recommendation Statement, the Board recommended that
24   shareholders tender their shares to Bed Bath & Beyond for the price of $22 per share. The
25   Recommendation Statement also set forth detailed disclosures, including background about the
26   transaction and descriptions of the fairness opinion and financial analysis provided by PJSC in
27   support of its opinion. Bower Reply Decl. Ex. B.
28

3
Case No.: 12-CV-02721-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

On the same day the Recommendation Statement was filed, Plaintiff Irene Dixon filed a shareholder class action on behalf of the public shareholders of Cost Plus. Plaintiff owns 100 shares of Cost Plus, which she purchased in March 2012. Leung Decl. ¶ 13 and Ex. 9; Opp'n to preliminary injunction at 5-6. Plaintiff's complaint names eleven corporate and individual defendants including: Cost Plus, Inc., Joseph H. Coulombe, Clifford J. Einstein, Barry J. Feld, Danny W. Gurr, John C. Pound, Kim D. Robbins, Fredric M. Roberts, Kenneth T. Stevens, Bed Bath & Beyond Inc., and Blue Coral Acquisition Corp. Compl. ¶ 1. Plaintiff's causes of action arise out of the same tender offer that forms the basis of Ogurkiewicz's complaint, but Plaintiff's complaint includes claims not included in Ogurkiewicz's state law action, including the Federal claims arising out of SEC filings that post-date Ogurkiewicz's state court action. Plaintiff alleges two federal causes of action: (1) a claim against Cost Plus and the Individual Defendants for violations of Sections 14(d)(4) and 14(e) of the Securities Exchange Act ("SEA"); and (2) a claim against the Individual Defendants for violations of Section 20(a) of the SEA. Plaintiff also brings two state law causes of action: (1) a claim against the Individual Defendants for breach of fiduciary duty; and (2) a claim against Bed Bath & Beyond and Merger Sub for aiding and abetting the Individual Defendants' breach of fiduciary duty.

Plaintiff filed a motion for preliminary injunction on June 4, 2012. On June 6, 2012, Cost Plus filed Amendment No. 1 to the Recommendation Statement, which contains the Support and Tender Agreement between Bed Bath & Beyond and Cost Plus. Bower Reply Decl. Ex. F. Additionally, Ogurkiewicz moved to intervene in Plaintiff's federal action on June 7, 2012.

On June 7, 2012, Ogurkiewicz's state law action was stayed, pursuant to Defendants' stipulation that they would not oppose Ogurkiewicz's Motion to Intervene in Plaintiff's federal action. The Intervenor filed a brief in support of a preliminary injunction on June 18, 2012. Defendants filed a response to the Intervenor's brief regarding the preliminary injunction on June 20, 2012. On June 21, 2012, Cost Plus filed Amendment No. 2 to the Recommendation Statement. Plaintiff Supp. to Record Ex. A. Amendment No. 2 disclosed certain information identified by Plaintiff and Intervenor as material omissions in the briefing on the motion for a preliminary injunction.

As the basis of the pending motion for a preliminary injunction, Plaintiff alleges that the Individual Defendants failed to take steps to maximize the value of Cost Plus to its public shareholders and failed to disclose all material information to enable shareholders to make an informed vote on the Proposed Merger. Compl. ¶¶ 29-32. Plaintiff alleges that the $22 per share offer undervalues Cost Plus stock. Compl. ¶¶ 44-46. Plaintiff alleges that the Cost Plus Board made no effort to look into bids from other prospective bidders, but instead employed preclusive deal protection devices to prevent an open auction of the company. Compl. ¶¶ 7; 47-51. Plaintiff argues that the termination fee in the deal is unreasonably high for this type of transaction, such that it thwarts alternate bidders from providing shareholders with a superior offer. Compl. ¶¶ 52-54.

Plaintiff also claims that the Recommendation Statement failed to provide shareholders with material information to allow them to make an informed decision on whether to vote their shares in favor of the Proposed Merger. In particular, Plaintiff alleges that the Recommendation Statement fails to fully describe the sales process leading up to the merger and fails to disclose the underlying methodologies and data relied upon by Cost Plus's financial advisor, PJSC, in recommending the deal. Compl. ¶¶ 57, 60.

Any other facts necessary for the resolution of the pending motions will be discussed below.

## II. MOTION TO INTERVENE

### A. Standard

Federal Rule of Civil Procedure 24(a)(2) requires that a court permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." In determining whether a party may intervene, the Ninth Circuit has identified four factors:

> (1) the applicant's motion must be timely; (2) the applicant must assert an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that without intervention the disposition of the action may, as a practical matter,

5
Case No.: 12-CV-02721-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the other parties.

*United States v. State of Oregon*, 839 F.2d 635, 637 (9th Cir. 1988). "[W]hile an applicant seeking to intervene has the burden to show that these four elements are met, the requirements are interpreted broadly, in favor of intervention." *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006).

Alternatively, under Fed. R. Civ. P. 24(b), "on a timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." "[I]n exercising its discretion, the court is to consider 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1128 n. 10 (9th Cir. 2002) (quoting Fed. R. Civ. Proc. 24(b)(2)).

**B. Discussion**

Ogurkiewicz seeks to intervene as a matter of right under Fed. R. Civ. Proc. 24(a), or in the alternative, permission to intervene under Fed. R. Civ. Proc. 24(b).

**1. Intervention under Fed. R. Civ. Proc. 24(a)**

**a. Timeliness of Motion to Intervene**

Ogurkiewicz argues that his Motion is timely because it will not prejudice Dixon or alter the case schedule. Mot. to Intervene at 4-5. In determining timeliness under Rule 24, a court should consider "(1) the stage of the proceeding; (2) prejudice to other parties; and (3) the reason for and the length of the delay." *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978). Dixon argues that Ogurkiewicz's Motion is untimely for two reasons: (1) Ogurkiewicz has been dilatory in pursuing intervention sufficiently in advance of the preliminary injunction hearing, and (2) Plaintiff might be prejudiced by intervention, because Ogurkiewicz's attorneys are self-interested and have shown insufficient "willingness to aggressively litigate." Opp'n at 6-7.

The Court is unpersuaded by Plaintiff's arguments. The record establishes that Ogurkiewicz has proceeded expeditiously in joining this suit. Ogurkiewicz filed his Motion to Intervene the same day his state court action was stayed, filed his Motion to Shorten Time only one

6
Case No.: 12-CV-02721-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

week later, and filed his Putative Intervenor's Brief in Support of Preliminary Injunction four days after the Motion to Shorten Time was granted. The Court does not find Ogurkiewicz's actions dilatory.

Moreover, there is no evidence that Ogurkiewicz will not aggressively litigate this case. Indeed, Ogurkiewicz filed the first action regarding this merger on May 11, 2012. Two weeks later, on May 25, 2012, Dixon filed a lawsuit alleging the same state law causes of action as Ogurkiewicz, plus two federal causes of action that will be discussed below. The Court notes that Ogurkiewicz was present at the preliminary injunction hearing and appears to be actively engaged in this case. Additionally, the Intervenor has indicated that he will petition the Court for appointment of his counsel as class counsel. As a long time shareholder who owns 45,000 shares, a 0.2% stake in Cost Plus, valued at approximately $1 million, Ogurkiewicz has a strong claim for appointment as lead plaintiff relative to Dixon who purchased 100 shares three months ago. Any alleged deficiencies of Ogurkiewicz's *counsel* are properly addressed at that time. Dixon's preference to be represented by her own counsel in a class action does not suggest that intervention by a party with different counsel will prejudice Dixon. Because Ogurkiewicz's Motion to Intervene is not dilatory, will not require alteration of the case schedule if granted, and will not prejudice Dixon, the Court finds Ogurkiewicz's Motion to Intervene timely.

### b. Potential impairment of Intervenor's Interest

Ogurkiewicz has also established that he has an asserted interest in the subject of the transaction and that failure to intervene may impair or impede his ability to protect that interest. *See State of Oregon*, 839 F.2d at 637. As explained above, the Intervenor has a large financial stake in the outcome of this litigation. Moreover, Ogurkiewicz's state court action could be extinguished by the present action, which seeks class-wide injunctive relief to halt the Proposed Transaction. *See* Mot. at 5-6; *see also* Intervenor Brief in Support of Preliminary Injunction (discussing Ogurkiewicz's asserted claims). In light of these facts, the Court finds Ogurkiewicz's interest is sufficient to support intervention.

### c. Adequate representation of Ogurkiewicz's interest by Dixon

In determining adequacy of representation, courts consider:

7
Case No.: 12-CV-02721-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)).  "[T]he burden of showing inadequacy is 'minimal,' and the applicant need only show that representation of its interests by existing parties 'may be' inadequate." *Southwest Ctr. for Biological Diversity*, 268 F.3d at 823 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528 (1972)).

Ogurkiewicz argues that Dixon cannot adequately represent his interests.  Mot. to Intervene at 6-7.  Ogurkiewicz has raised arguments and issues in his brief in support of the motion for a preliminary injunction that were not raised by Dixon.  Several of Ogurkiewicz's arguments appear to have prompted additional disclosures by Defendants in the June 21, 2012 amendment to Schedule 14D-9.

Furthermore, Ogurkiewicz's interests potentially diverge from Dixon's in two respects.  *See* Reply at 4 (discussing Ogurkiewicz's divergent interests), *cf.* Mot. at 7 (arguing that Ogurkiewicz will be a superior class representative).  Ogurkiewicz owns significantly more shares than Dixon, and Ogurkiewicz has owned his shares for significantly longer than Dixon.  Reply at 4. Because Ogurkiewicz has offered arguments not raised by Dixon, and Ogurkiewicz's interest in the Proposed Transaction differs from Dixon's in potentially material respects, the Court finds that Ogurkiewicz's interests might not be adequately represented by the Plaintiff in this action.

Therefore, the Court finds that Ogurkiewicz's Motion to Intervene meets the Ninth Circuit's four-part test for intervention as of right under Fed. R. Civ. Proc. 24(a).  *See State of Oregon*, 839 F.2d at 637.  The Court need not address whether intervention is proper under Rule 24(b).

### 2. Compliance with Fed. R. Civ. Proc. 24(c)

Dixon also argues that Ogurkiewicz's proposed intervention is procedurally deficient because Ogurkiewicz "failed to attach a pleading setting forth the claims for which intervention is sought," pursuant to Fed. R. Civ. P. 24(c).  Ogurkiewicz's Motion specifically states that

intervention is sought on claims already included in the Dixon Complaint. Mot. at 3. A Rule 24(c) attachment is not required "where . . . the movant describes the basis for intervention with sufficient specificity to allow the district court to rule. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992); *cf.* Charles Alan Wright, Arthur R. Miller, and Mary K. Kane, *Federal Practice and Procedure* § 1914 ("If the intervenor is content to stand on the pleading an existing party has filed, it is difficult to see what is accomplished by adding to the papers in the case a new pleading that is identical in its allegations with one that is already on file.") Moreover, Ogurkiewicz attached his complaint. Seaver Decl. Ex. A. Dixon incorporated Ogurkiewicz's state law cause of action in Dixon's complaint. Ogurkiewicz has provided the Court with sufficient information to rule on his Motion. Ogurkiewicz has met all of the requirements to intervene in this action, and therefore his motion is GRANTED.

### III. MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction is an extraordinary remedy, never granted as a matter of right. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 20. The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F. 3d 1196, 1201 (9th Cir. 2009). The issuance of a preliminary injunction is at the discretion of the district court. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).

#### A. Likelihood of Success on the Merits

Plaintiff's complaint alleges four causes of action. The two federal causes of action allege violations of 14(e) and 20(a) of the SEA. The two state law causes of action allege breach of fiduciary duty against the Individual Defendants and against the corporate entities for aiding and abetting the Individual Defendants' breach of fiduciary duty. The Court will discuss the likelihood of success on each of the asserted claims.

##### 1. Federal Claims

9
Case No.: 12-CV-02721-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Plaintiff is unlikely to succeed on the merits of her federal claims because Plaintiff has failed to allege, let alone prove, that Defendants acted with scienter. Under Section 14(e)[2] of the Securities and Exchange Act, Plaintiff must show that Defendants made a material misrepresentation or omission with scienter in connection with a tender offer. *Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1131, 1150 (N.D. Cal. 2006), *aff'd by* 551 F.3d 1156, 1167 (9th Cir. 2009). Under PSLRA, a plaintiff must establish facts giving rise to a strong inference that the defendant acted with intent or deliberate recklessness. *Gompper v. VISX, Inc.,* 298 F.3d 893, 895 (9th Cir. 2002); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F. 3d 970 (1999). Moreover, if a statement is not false or misleading, "it does not become actionable merely because it is incomplete." *Rubke*, 460 F. Supp. 2d at 1131.

At best, Plaintiff has pled that Defendants' conduct was negligent. The Complaint asserts that "in the exercise of reasonable care, Cost Plus and the Individual Defendants *should have known* that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading." Compl. ¶ 65 (emphasis added). Similarly, the Intervenor argues that the board of directors "buried its head in the sand," with respect to the appropriateness of the deal. Moreover, neither Plaintiff, nor the Intervenor, has cited sufficient evidence from which this Court could find that Plaintiff is likely to prove scienter at trial. Finally, when pressed at the hearing as to whether Plaintiff had alleged scienter, Plaintiff conceded that she had not. Hr'g Tr. at 31-32. As scienter is a necessary element of Plaintiffs' PSLRA claims, Plaintiff is unlikely to succeed on her Section 14(e) claim.

Plaintiff also alleges liability under Section 20(a), which provides for joint and several liability amongst Defendants for violations of the Securities and Exchange Act of 1934. Because Plaintiff has not established a basis for liability under Section 14(e) as discussed above, Plaintiff has not established a claim under Section 20(a). *See Heliotrope General, Inc. v. Ford Motor Co.,* 189 F.3d 971, 978 (9th Cir. 1999) (finding no secondary liability without primary violations).

---

[2] Plaintiff also purports to bring a Section 14(d)(4) claim, but that provision does not give rise to a private right of action. *See, e.g., Erickson v. Wheatley Ventures*, No. C–96 2934, 1997 WL 119849, *5 (N.D. Cal. Mar. 4, 1997); *Washburn v. Madison Square Garden Corp.*, 340 F.Supp. 504, 508 (S.D.N.Y. 1972)

10
Case No.: 12-CV-02721-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

### 2. Breach of Fiduciary Duty

The Court follows the choice-of-law rules of the forum state – California – to determine the substantive law that applies to Plaintiff's state law breach of fiduciary duty claim. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (district court must follow substantive law, including choice-of-law rules, of forum state). Under the "internal affairs" doctrine, which is followed in most states, the law of the state of incorporation governs liabilities of officers or directors to the corporation and its shareholders. *Shaffer v. Heitner*, 433 U.S. 186, 215 n. 44 (1977); s*ee also CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 89 (1987); *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983); Rest. (Second) of Conflict of Laws § 309 and comment (a). In general, California courts follow this rule and apply the law of the state of incorporation in considering claims relating to internal corporate affairs. *See Batchelder v. Kawamoto*, 147 F.3d 915, 920 (9th Cir. 1998). Cost Plus is incorporated in California, and the parties agree that California law applies. *See* Mot. at 5-6; Opp'n at 19-20. California law recognizes that officers and directors owe a fiduciary duty to stockholders, and controlling stockholders owe a fiduciary duty to minority stockholders. *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 179 (2003). With this understanding, the Court turns to the main arguments raised by the parties.

*Price and Process Arguments*

Plaintiff first argues that the directors breached their fiduciary duty to obtain the best price reasonably available for shareholders in the merger process. Under *Revlon*, when a board has decided to engage in a change of control transaction, it must act reasonably in order to secure the highest price reasonably available. *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 184 n.16 (Del. 1986). Plaintiff urges the Court to apply a heightened standard in reviewing the board's actions because this case involves a merger that will result in a change of control. *See Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914, 928 (Del. 2003), citing *Revlon, Inc.*, 506 A.2d at 182. Defendants, on the other hand, argue that Plaintiff is barred by California Corporations Code § 1312(a) from seeking injunctive relief based on the "unfair price" and "unfair

process" arguments. Specifically, Defendants argue that Section 1312(a) provides that an appraisal proceeding is the exclusive remedy for challenges to mergers.

California Corporations Code § 1312(a) is a unique statute. The California Supreme Court has noted that it is aware "of no other jurisdiction which has a statute similar to section 1312(a)."[3] *Steinberg v. Amplica, Inc.*, 42 Cal. 3d 1198, 1213 (1986). Section 1312(a) states "[n]o shareholder of a corporation who has a right under this chapter to demand payment of cash for the shares held by the shareholder shall have any right *at law or in equity* to attack the validity of the reorganization or short-form merger, or to have the reorganization or short-form merger set aside or rescinded, except in an action to test whether the number of shares required to authorize or approve the reorganization have been legally voted in favor thereof." *Id*. (emphasis added).

California courts have interpreted this provision to limit the availability of relief for allegations that directors "breached their fiduciary obligation in agreeing to the merger terms, and in the process engaged in self-dealing and other breaches of duty." *Steinberg*, 42 Cal. 3d at 1206. In *Steinberg*, the California Supreme Court concluded that Section 1312(a) "acts as a bar" to suits challenging the appropriateness of a merger where the "plaintiff was aware of all the facts leading to his cause of action for alleged misconduct in connection with the terms of the merger prior to the time the merger was consummated but deliberately opted to sue for damages instead of seeking appraisal." *Id*. at 1214. Thus, plaintiffs are barred by section 1312(a) from seeking monetary damages for breaches of fiduciary duty and fraud in the course of a merger. Similarly, suits seeking to enjoin or unwind a merger are prohibited by section 1312(a). *See id*. at 1213. Appraisal proceedings constitute an exclusive remedy "by which minority shareholders might seek to enjoin or attack changes such as a merger or consolidation, except on the question of an insufficient vote to authorize a merger or consolidation." *Giannini Controls Corp. v. Superior Ct. for L.A. County*, 240 Cal. App. 2d 142, 154 (1966).

Although the Court has not found any case directly on point that establishes that Plaintiff is barred from seeking preliminary injunctive relief in the situation presented here, the California

---

[3] Colorado at one time had a similar statute, which has since been repealed. *See Steinberg*, 42 Cal. 3d at 1213; Colo. Rev. Stats. § 7-4-123(4).

12
Case No.: 12-CV-02721-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1  courts have clearly established that the relief available to minority shareholders that wish to attack
2  a merger is strictly circumscribed. Moreover, as a matter of policy, California has established a
3  statutory bar to merger challenges by minority shareholders outside of appraisal proceedings in an
4  effort to avoid "strike suits" by minority shareholders. California's appraisal statute was instituted
5  "to protect the majority against strike suits by abrogating equitable remedies by way of injunction
6  or rescission to litigate charges of fraud or unfairness, which may be used to extort a settlement by
7  obstruction of a transaction duly authorized." *Giannini Controls Corp.*, 240 Cal. App. 2d at 154
8  (citing Ballantine on Corporations at 703 (1946) ("The crucial point at issue in equitable suits for
9  rescission and also for preventive relief against merger or consolidation is after all usually one of
10 price, as to the true exchange value of the dissenting shares, perhaps of only a small number of
11 shares. The confining of litigation with dissenters to the question of value and compensation
12 simplifies the issues to be tried and protects all parties.")). In light of the statutory language of
13 section 1312(a), the relevant authority interpreting the statute, and the policy behind the enactment
14 of the statute, the Court finds that Plaintiffs are likely precluded from seeking preliminary
15 injunctive relief barring the merger because the price or process of the merger was arguably unfair.
16 Accordingly, Plaintiff has not established that she is likely to succeed on the merits of her breach of
17 fiduciary duty claim to the extent that this claim relies on arguments that the merger price is unfair,
18 or the process employed by the directors was inadequate.

*Disclosure Claims*

20 Plaintiff also alleges that Defendants have failed to properly disclose information in its
21 Schedule 14D-9 Recommendation Statement filed with the SEC. Defendants contest that
22 California law recognizes a duty of candor, and in the alternative, argue that any omissions or
23 misstatements are not material.
24 As discussed above, California Corporations Code § 1312(a) provides the exclusive remedy
25 for minority shareholders seeking to challenge a proposed merger. Although Section 1312(a)
26 generally bars attempts to enjoin proposed mergers by minority shareholders, it appears that there
27 may be a recognized exception to this bar for challenges based on "the question of an insufficient
28 vote to authorize a merger or consolidation." *Giannini Controls Corp.*, 240 Cal. App. at 154. In

1  other words, "[a] action to test whether the shares were legally voted arguably might permit

2  challenges such as whether the meeting was properly called, and proper notice given to all

3  shareholders; **whether there were adequate disclosures made in soliciting proxy votes**; the

4  validity of proxy votes, the correctness of the vote tallies, etc." *Singhania v. Uttarwar*, 136 Cal.

5  App. 4th 416, 427 (2006) (internal quotation marks omitted) (emphasis added). Thus, challenges

6  related to sufficient disclosures made during the course of a proxy vote may be exempted from the

7  remedial bar of Section 1312(a). At this point, the Court need not make a final determination

8  regarding whether Plaintiff's disclosure claim is barred by 1312(a), because even if it is not barred,

9  Plaintiff has not shown that she is likely to succeed on the merits of her disclosure claim.

10  California Corporations Code § 25401 prohibits anyone from selling, or offering to sell a

11  security "by means of any written or oral communication which includes an untrue statement of a

12  material fact or omits to state a material fact necessary in order to make the statements made, in the

13  light of the circumstances under which they were made, not misleading." Directors are under a

14  fiduciary duty to disclose fully and fairly all material information within the board's control when

15  it seeks shareholder action. *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992); *Oakland Raiders v.

16  National Football League*, 93 Cal. App. 4th 572, 586 n.5 (2001) (citing *Shields v. Singleton*, 15

17  Cal. App. 4th 1611, 1621 (1993) (permitting California courts to rely on Delaware corporate law

18  where it is not materially different)).

19  "[T]he question of materiality, it is universally agreed, is an objective one, involving the

20  significance of an omitted or misrepresented fact to a reasonable investor." *Lynch v. Cook*, 148

21  Cal. App. 3d 1072, 1081-82 (citing *TSC Industries, Inc. v. Northway, Inc*., 426 U.S. 438, 445

22  (1976)). The test of materiality requires "a substantial likelihood that, under all the circumstances,

23  the omitted fact would have assumed actual significance in the deliberations of the reasonable

24  shareholder. Put another way, there must be a substantial likelihood that the disclosure of the

25  omitted fact would have been viewed by the reasonable investor as having significantly altered the

26  'total mix' of information made available." *TSC Industries, Inc*., 426 U.S. at 449. Plaintiff and the

27  Intervenor have alleged that several misstatements or omissions in the Schedule 14D-9 Disclosure

28

14

Case No.: 12-CV-02721-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

are material and a preliminary injunction should issue to require Defendants to cure the defective disclosures.

The Court has reviewed the Schedule 14D-9 filed on May 25, 2012, the Amendments to the Schedule 14D-9 filed on June 6, 2012 and June 21, 2012, as well as the briefs of the parties. At the hearing on the motion for the preliminary injunction, the Court reviewed with the parties each of the allegedly material omissions contained in Schedule 14D-9 and its amendments. The Court finds that neither Plaintiff nor the Intervenor has met the burden of establishing a likelihood of success on the merits. All of the allegedly material non-disclosures or misstatements were either not, in fact material, or were subsequently disclosed and remedied in the June 6 or June 21 filing. For example, the reasoning behind the financial advisor's use of a 33 month forecasted future cash flow was not material information that would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Industries, Inc.*, 426 U.S. at 449. Similarly, the Plaintiff and Intervenor's allegations that the range of values for "Selected Publicly Traded Comparable Companies" and "Selected Precedent Transactions" were originally not disclosed, were remedied when these ranges were subsequently disclosed in the June 21 amendment to the Recommendation Statement.

In sum, Plaintiff has failed to establish that she is likely to succeed on the merits as to any of her claims for relief.

**B. Irreparable Harm and Balancing of Hardships**

In order to obtain a preliminary injunction, Plaintiff and Intervenor must establish that they are likely to suffer irreparable harm in the absence of the requested relief. *Winter*, 555 U.S. at 19 ("[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction."). As a general rule, plaintiffs seeking injunctive relief must demonstrate that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Moreover, "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "The factors examined above—the balance of equities

15
Case No.: 12-CV-02721-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

and consideration of the public interest—are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent." *Winter*, 555 U.S. at 32.

*Unfair Price and Process Claims*

As explained above, Plaintiff and Intervenor have not established that they are likely to succeed on the merits of their claim that Defendants breached their fiduciary duty to act reasonably in order to secure the highest price reasonably available in the merger process. Nor have Plaintiff and Intervenor established that they will be irreparably harmed absent an injunction based on their allegations of unfair price and process. Where, as here, Plaintiff and Intervenor are not "thwarted bidders," they do not face the unique harm of losing an opportunity to acquire Cost Plus. Plaintiff and Intervenor merely face the loss of the dollar value from the theoretical possibility that there may have been a better deal available. "This seems to be harm that can be rectified adequately in a later appraisal proceeding" and is thus not likely "irreparable." *In re Toys "R" Us, Inc. Shareholder Litig.*, 877 A.2d 975, 1023 (Del. Ch. 2005). Moreover, where there is no rival bid available, it would be imprudent to grant injunctive relief to "enjoin the only deal on the table, when the stockholders can make that decision for themselves." *In re Netsmart Techs., Inc. Shareholders Litig.*, 924 A.2d 171, 208 (Del. Ch. 2007) ("By contrast, when this court is asked to enjoin a transaction and another higher-priced alternative is not immediately available, it has been appropriately modest about playing games with other people's money.); *In re Pennaco Energy, Inc.*, 787 A.2d 691, 715 (2001) ("After all, even when a sufficient merits showing is made by a plaintiff, this court is justifiably reluctant to enjoin a premium-generating transaction when no other option is available, except insofar as is necessary for the disclosure of additional information to permit stockholders to make an informed decision whether to tender."). In light of these considerations, Plaintiff and Intervenor have not established that they are entitled to a preliminary injunction based on their claims that Defendants breached their duties in extracting the highest price reasonably available in the merger process.

*Disclosure Claims*

Courts have recognized that the right of a stockholder to an informed vote in a merger can be an irreparable harm. *In re Netsmart Techs., Inc. Shareholders Litig.*, 924 A.2d at 207 ("Because

16

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

this feature of our law is so centrally important, this court has typically found a threat of irreparable injury to exist when it appears stockholders may make an important voting decision on inadequate disclosures.  By issuing an injunction requiring additional disclosure, the court gives stockholders the choice to think for themselves on full information, thereby vindicating their rights as stockholders to make important voting and remedial decisions based on their own economic self-interest.").  Where, as here, however, Plaintiff and the Intervenor have failed to establish a likelihood of success on the merits of the disclosure claims, there is no similar threat that the shareholders will not be able to make an informed decision on an important voting decision.

Moreover, in this case, the balance of the equities weighs against issuing an injunction. Courts are reluctant to enjoin premium generating transactions, particularly when a competing offer is not available.  *See e.g., In re Pennaco Energy, Inc. S'holders Litig*., 787 A.2d at 715.  "In tender offer cases, there is a strong public policy in favor of preserving shareholders' freedom to choose between selling stock at a tender offer price and retaining their securities.  As such, requests for injunctions against tender offers are frequently denied because the hardships to the moving party do not often outweigh this strong policy of shareholder freedom. This is particularly true in cases, such as the present one, where enjoining the transaction might result in the permanent withdrawal of the offer due to the loss of the offeror's financing.  Therefore, the public policy favoring competitive freedom outweighs any purported harm to the moving party for purposes of granting injunctive relief."  *Jewel Companies, Inc. v. Pay Less Drug Stores Nw., Inc*., 510 F. Supp. 1006, 1010 (N.D. Cal. 1981).

Here, enjoining the proposed transaction as demanded by Plaintiff and the Intervenor would threaten the ability of thousands of other shareholders to tender their shares at a 22% premium. Moreover, enjoining the transaction could create a real threat to Cost Plus shareholders since the Merger Agreement stipulates that Bed Bath and Beyond is exempt from purchasing any tendered shares if consummation of the merger is enjoined.  Leung Decl. Ex. 3 at Annex I(c).  Moreover, even a limited, more tailored remedy of requiring further disclosures is not warranted in this case because Plaintiff and the Intervenor have failed to establish they are likely to succeed on the merits of their disclosure claim.

17

Case No.: 12-CV-02721-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Finally, in light of California's public policy, "to protect the majority against strike suits . . . which may be used to extort a settlement by obstruction of a transaction duly authorized," it would not be in the public interest to enjoin the proposed transaction here. *Giannini Controls Corp.*, 240 Cal. App. 2d at 154.  Plaintiff and Intervenor have failed to establish a likelihood of success on the merits of any of their claims, have not shown that they are likely to suffer irreparable harm, and have not shown that either the balance of the equities or the public interest favors an injunction. Accordingly, Plaintiff's motion is DENIED.

**IT IS SO ORDERED.**

Dated: June 27, 2012

_____
LUCY H. KOH
United States District Judge

18
Case No.: 12-CV-02721-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION