Gustavo F. Bruckner *(admitted pro hac vice)*
Samuel J. Adams
**POMERANTZ GROSSMAN HUFFORD**
**DAHLSTROM & GROSS LLP**
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: gfbruckner@pomlaw.com
      sjadams@pomlaw.com

*Counsel for Plaintiff-Intervenor and Plaintiff Gary Ogurkiewicz*

Nicole Lavallee (SBN 165755)
Todd A. Seaver (SBN 271067)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
Email: nlavallee@bermandevalerio.com
      tseaver@bermandevalerio.com

*Local Counsel for Plaintiff-Intervenor and Plaintiff Gary Ogurkiewicz*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IRENE DIXON, On Behalf of Herself and All Others Similarly Situated,<br><br>              Plaintiff,<br><br>v.<br><br>COST PLUS, INC., JOSEPH H. COULOMBE, CLIFFORD J. EINSTEIN, BARRY J. FELD, DANNY W. GURR, JOHN C. POUND, KIM D. ROBBINS, FREDRIC M. ROBERTS, KENNETH T. STEVENS, BED BATH & BEYOND INC., and BLUE CORAL ACQUISITION CORP.,<br><br>              Defendants. | Case No. 12-cv-02721-LHK<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER GRANTING: (1) APPROVAL OF APPOINTMENT OF CLASS REPRESENTATIVE AND LEAD COUNSEL; (2) FINAL APPROVAL OF PROPOSED SETTLEMENT AND CLASS CERTIFICATION; (3) APPROVAL OF AWARD OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD; AND MEMORANDUM IN SUPPORT THEREOF**<br><br>Date:     December 5, 2013<br>Time:    1:30 pm<br>Crtrm:   8, 4th Floor<br>Before:  Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**PAGE**

I.   PRELIMINARY STATEMENT .................................................................................. 1

II.  FACTUAL BACKGROUND ...................................................................................... 2

    A.   Litigation History ........................................................................................ 3

    B.   The Settlement ............................................................................................ 5

III. DR. OGURKIEWICZ AND POMERANTZ ARE ADEQUATE CLASS
    REPRESENTATIVES ............................................................................................... 7

IV.  ARGUMENTS ......................................................................................................... 8

    A.   Notice to the Settlement Class Satisfied Due Process Requirements ................... 8

    B.   The Settlement Class Should be Certified .......................................................... 9

        1.   Class Certification Should Be Granted for Settlement Purposes Under
            Rule 23 ............................................................................................... 9

        2.   The Proposed Class Satisfies the Criteria of Rule 23(a) ............................ 9

        3.   The Proposed Class Satisfies the Criteria of Rule 23(b) ......................... 11

V.   FINAL SETTLEMENT APPROVAL IS APPROPRIATE ........................................... 11

    A.   Settlement and Class Action Approval Process ................................................ 11

    B.   The Settlement Is Presumed Fair, Adequate, and Reasonable ............................ 13

    C.   All of the Relevant Factors Support Final Approval of the Settlement ............... 14

        1.   The Value of the Settlement, and the Substantial Benefits it Provides to
            Class Members, Support Final Approval ................................................. 14

        2.   The Risks Inherent in Continued Litigation Support Final Approval ........ 15

        3.   The Fact that Discovery and Investigation Were Completed Before
            Settlement Favors Final Approval .......................................................... 15

        4.   The Terms and Conditions of the Proposed Settlement Favor Final
            Approval ........................................................................................... 15

        5.   The Recommendation of Experienced Class Counsel Supports Final
            Approval ........................................................................................... 16

        6.   The Expense and Likely Duration of Litigation in the Absence of a
            Settlement Supports Final Approval ....................................................... 16

7.  The Presence of Good Faith and the Absence of Collusion Favors Final Approval ........................................................................................ 17

8.  Class Members' Positive Reaction Supports Final Approval ................. 17

VI.  PLAINTIFFS' COUNSEL IS ENTITLED TO THE REQUESTED AWARD OF ATTORNEYS' FEES AND EXPENSES ........................................................ 18

A.  Plaintiff Counsel's Lodestar Greatly Exceeds the Fees Sought Herein ............. 19

B.  Other Relevant Factors Support the Fee Award .................................. 21

VII.  THE INCENTIVE AWARD SHOULD BE APPROVED ............................................. 23

VIII.  CONCLUSION .......................................................................................... 24

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Alberto v. GMRI, Inc.*,
    252 F.R.D. 652 (E.D. Cal. 2008)................................................................23

*Bryan v. Pittsburgh Plate Glass Co.*,
    494 F.2d 799 (3d. Cir. 1974)................................................................17

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992)..............................................11, 13, 16, 17

*Garner v. State Farm Mutual Auto. Ins. Co.*,
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ....................................23

*Hanlon v. Chrysler Corp.*,
    150 F.3d at 1011 (9th Cir. 1998)..........................................................9, 10

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992)................................................................10

*Home Placement Serv., Inc. v. Providence Journal Co.*,
    819 F. 2d 1199 (1st Cir. 1987) ............................................................18

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)................................................................22

*In re Sauer-Danfoss Inc. Shareholders Litig.*,
    65 A3d 1116 (Del. Ch. 2011) ..............................................................18

*Jordan v. Los Angeles County*,
    669 F.2d 1311(9th Cir. 1982),.............................................................9

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1995)................................................................19

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978)................................................................7

*M. Berenson Co. v. Faneuil Hall Marketplace Inc.*,
    671 F. Supp. 819 (D. Mass. 1987) ................................................14, 17

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977)..............................................................17

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003)................................................................10

*Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    762 F.2d 1093 (D.C. Cir. 1985) ..........................................................13

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ........................................................................................................ 8

*Nat Rural Telecomms. Corp. v. DIRECTTV, Inc.*,
  221 F.R.D. 528 (C.D. Cal. 2004) ................................................................................... 16

*Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*,
  688 F.2d 615 (9th Cir.1982) .......................................................................................... 13

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ....................................................................................................... 17

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ......................................................................................... 23

*Staton v. Boeing*,
  327 F.3d 938 (9th Cir. 2003) .................................................................................. 10, 18

*Tchoboian v. Parking Concepts, Inc.*,
  2009 WL 2169883 (C.D. Cal. July 16, 2009) ................................................................. 9

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ....................................................................................... 22

*Wiener v. Dannon Co., Inc.*,
  255 F.R.D. 658 (C.D. Cal. 2009) ............................................................................. 9, 10

*Young v. Katz*,
  447 F.2d 431 (5th Cir. 1971) ......................................................................................... 17

*Young v. Polo Retailer, LLC*,
  2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ................................................................. 19

**Statutes**

15 U.S.C.A. §§ 78n, 78aa ......................................................................................................... 3

**Rules**

Federal Rules of Civil Procedure
  Rule 23 .......................................................................................................................... 9, 13
  Rule 23(a) ................................................................................................................... 5, 6, 9
  Rule 23(a)(1) ....................................................................................................................... 9
  Rule 23(a)(3) ..................................................................................................................... 10
  Rule 23(a)(4) ................................................................................................................. 7, 10
  Rule 23(b) .......................................................................................................................... 11
  Rule 23(b)(1) ........................................................................................................... 5, 6, 9, 11
  Rule 23(b)(2) ........................................................................................................... 5, 6, 9, 11
  Rule 23(e) ............................................................................................................................. 1
  Rule 23(e)(1) ....................................................................................................................... 8
  Rule 23(g)(1)(A) .................................................................................................................. 7
  Rule 23(g)(1)(B) .................................................................................................................. 7

**<u>Other Authorities</u>**

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002)
  § 11.22 ................................................................................................................ 12
  § 11.41 ................................................................................................................ 12
  § 11.43 ................................................................................................................ 17

Manual for Complex Litigation (*Fourth*) §§ 21.632-34 (4th ed. 2013) ...................................... 12

## ISSUES TO BE DECIDED

1. Whether the Court should appoint Dr. Gary Ogurkiewicz as Settlement Class Representative and Pomerantz Grossman Hufford Dahlstrom & Gross LLP as Lead Counsel?

2. Whether the Court should grant final approval of the Settlement set forth in the Stipulation of Settlement dated as of February 11, 2013, filed with this Court on February 15, 2013?

3. Whether the Court should grant final class certification of the Settlement Class conditionally certified in its Preliminary Approval Order dated July 18, 2013?

4. Whether the Court should approve the unopposed request for an award of attorneys' fees, expenses, and incentive fee in the aggregate amount of $375,000.00?

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on December 5, 2013, at 1:30 p.m., or as soon thereafter as counsel may be heard, at the United States District Court for the Northern District of California, San Jose Courthouse, Courtroom 8, 4th Floor, 280 South 1st Street, San Jose, California 95113, before the Honorable Lucy H. Koh, United States District Judge, Plaintiffs Dr. Gary Ogurkiewicz ("Dr. Ogurkiewicz") and Mr. Willie M. Richardson ("Mr. Richardson," and together with Dr. Ogurkiewicz, "Plaintiffs") will and hereby do make a motion for (1) approval of appointment of Dr. Ogurkiewicz as Settlement Class Representative and Pomerantz Grossman Hufford Dahlstrom & Gross LLP ("Pomerantz") as Lead Counsel; (2) final approval of the proposed settlement (the "Settlement") of this class action; (3) final class certification of the Settlement Class conditionally certified in this Court's Preliminary Approval Order; (4) approval of an award of attorneys' fees and expenses; and (5) approval of an application for an incentive fee for Dr. Ogurkiewicz (the "Motion").[1] Plaintiffs' Motion is based on the Memorandum in support of Plaintiffs' Motion, the Declaration of Gustavo F. Bruckner in Support of the Settlement and Application for an Award of Attorneys' Fees and Reinbursement of Expenses, submitted herewith (the "Bruckner Settlement Decl."), the record in this action, and such additional evidence or argument as may be required by the Court.

<strong>MEMORANDUM OF POINTS AND AUTHORITIES</strong>

**I.      PRELIMINARY STATEMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs, by their respective counsel Pomerantz; Berman DeValerio; Brower Piven, A Professional Corporation; and Brodsky & Smith, LLC (collectively, "Plaintiffs' Counsel"), respectfully submit this memorandum of law in support of the Motion. If approved, the proposed Settlement will resolve the above-captioned action (the "Federal Action"), and the actions captioned *Gary Ogurkiewicz v. Cost Plus, Inc. et al.*, No. RG 12-629912 (the "Ogurkiewicz action") and *Willie M.*

---

[1] A proposed form of Order is submitted concurrently herewith as Exhibit B to the Bruckner Settlement Declaration.

*Richardson v. Cost Plus, Inc. et al.*, No. RG 12-631301 (the "Richardson action") both pending before the California Superior Court, County of Alameda (the "State Court").[2]

The Settlement, agreed to by Plaintiffs and the Director Defendants,[3] along with Cost Plus, Inc. ("Cost Plus" or the "Company"), Bed Bath & Beyond Inc. ("BBBY"), and Blue Coral Acquisition Corp. (the "Merger Sub") (together, BBBY, the Merger Sub, the Director Defendants and Cost Plus, the "Defendants") is memorialized in a Stipulation of Settlement as of February 11, 2013 and filed with this Court on February 15, 2013 (the "Stipulation") (ECF No. 89). The Settlement is based upon Defendants' issuance of supplemental disclosures demanded by Plaintiffs, which were filed with the U.S. Securities and Exchange Commission ("SEC") on June 6, 2012 and June 21, 2012 (the "Supplements"),[4] as a direct result of Plaintiffs' litigation efforts. The Supplements enabled Cost Plus shareholders to make a fully-informed decision on the merits of the merger of Cost Plus and BBBY (the "Merger").

For the reasons set forth below, Plaintiffs respectfully request that the Court grant final approval of the Settlement and award fees and reimbursement of expenses to Plaintiffs' Counsel, agreed to and to be paid by Defendants, in the aggregate amount of $375,000.

## II.    FACTUAL BACKGROUND

On May 9, 2012, Cost Plus announced it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with BBBY and its subsidiary the Merger Sub. The Merger Agreement provided that BBBY would acquire all of the outstanding shares of Cost Plus for $22.00 per share in cash and that the Merger would be effected through what is called a "two-step" merger, whereby the Merger Sub would commence a tender offer to acquire all

---

[2] The Federal Action, the Ogurkiewicz action, and the Richardson action are collectively referred to as the "Actions."

[3] Joseph Coulombe, Clifford Einstein, Barry Feld, Danny Gurr, Kim Robbins, Frederic Roberts, Kenneth Stevens, (collectively, the "Board" or "Director Defendants").

[4] The Supplements are attached as Exhibits 4 and 5 to the Declaration of Gustavo F. Bruckner In Support of Plaintiffs' Unopposed Motion For Preliminary Approval of Settlement, filed February 21, 2013, ECF No. 91 (the "Bruckner Decl.").

outstanding shares of Cost Plus at a purchase price of $22.00 per share. (Class Action Complaint ("Cmplt."), ECF No. 1, ¶¶3-4.) Shares not acquired in the tender offer would receive the same $22.00 cash consideration by means of a short-form merger. (*Id.*)

## A. Litigation History

On May 11, 2012, Dr. Ogurkiewicz initiated the Ogurkiewicz Action, alleging California state law causes of action for breach of fiduciary duty and aiding and abetting on behalf of a putative class of Cost Plus stockholders against Defendants. (Bruckner Decl. ¶ 3.) On May 22, 2012, Mr. Richardson filed the related Richardson Action. (*Id.* ¶ 4.)

On May 25, 2012, Cost Plus filed with the SEC the Company's Recommendation Statement on Schedule 14D-9 in support of the Merger (the "Recommendation Statement"). (Bruckner Decl. Ex. 2.)

On May 25, 2012, Irene Dixon ("Dixon") filed the Federal Action against Defendants challenging the Merger and alleging claims substantially similar to those alleged in the Ogurkiewicz and Richardson Actions as well as a claim for violation of Section 14(e) of the Williams Act (15 U.S.C.A. §§ 78n, 78aa). (ECF No. 1.) Dixon subsequently filed a motion for a preliminary injunction seeking to enjoin the Merger (the "Preliminary Injunction Motion"). (*See generally* ECF No. 35.)

On May 30, 2012, certain Defendants in the Ogurkiewicz Action moved to dismiss and stay the Ogurkiewicz Action and subsequently filed identical motions in the Richardson Action. (Bruckner Decl. ¶ 5.)

On June 4, 2012, Dr. Ogurkiewicz filed an *Ex Parte* Application for Discovery on Shortened Time and Memorandum of Points and Authorities in Support in the Ogurkiewicz Action (the "*Ex Parte* Application"). (Bruckner Decl. ¶ 6 & Ex. 3.) On June 6, 2012, the State Court denied the *Ex Parte* Application and granted a motion by Defendants to stay, conditioned on Defendants not opposing intervention by Dr. Ogurkiewicz in the Federal Action. (*Id.*)

On June 6, 2012, Cost Plus filed with the SEC an amendment to its Recommendation Statement (the "First Amendment") to reflect certain information raised by Dr. Ogurkiewicz in

his *Ex Parte* Application and in an earlier demand letter sent to Defendants.  (Bruckner Decl. Ex. 4.)

On June 7, 2012, Dr. Ogurkiewicz filed a motion to intervene in the Federal Action (the "Intervention Motion").  (ECF No. 20.)

Pursuant to a confidentiality stipulation entered into on May 30, 2012 (ECF No. 5), Defendants produced in the Federal Action certain core documents including: (a) draft minutes of the Board; (b) draft minutes of a committee comprised of certain of the Company's outside directors (the "Special Committee"); (c) presentations to the Board and Special Committee by the Special Committee's financial advisor; and (d) management presentations made by Cost Plus to BBBY.   In addition, the following individuals were deposed in the Federal Action: (a) on June 5, 2012, John Pound, an outside director of Cost Plus who was a member of the Special Committee; (b) on June 7, 2012, Jeffrey Hornstein, a managing director of Peter J. Solomon Company ("PJSC"), the Special Committee's financial advisor who had separately produced documents in the Federal Action; and (c) on June 8, 2012, Barry Feld, Cost Plus' Chief Executive Officer.  (Bruckner Decl. ¶ 7.)

On June 14, 2012, the Federal Court issued an order setting, among other things, (a) the hearing on the Preliminary Injunction Motion for June 25, 2012, and (b) a briefing schedule for Dr. Ogurkiewicz to file papers in connection with the Preliminary Injunction Motion as well as for Defendants' response.  (ECF No. 45.)

On June 21, 2012, Cost Plus filed with the SEC an amendment to its Recommendation Statement (the "Second Amendment") (Bruckner Decl. Ex. 5), to reflect certain information raised by Dr. Ogurkiewicz in his brief filed in support of the Preliminary Injunction Motion and in an earlier demand letter sent to Defendants.

On June 25, 2012, the Court heard argument on both the Preliminary Injunction Motion and the Intervention Motion in the Federal Action.  (ECF No. 79.)  The Court denied the Preliminary Injunction Motion based on a failure to demonstrate both irreparable injury and a likelihood of success on the merits and issued an order to that effect on June 27, 2012. (ECF No.

81.)  The Court also granted the Intervention Motion.  (*Id*.)  After ruling from the bench, the Court urged the Parties to consider settling the matter based on the Supplements made by Cost Plus.  (*See* Bruckner Settlement Decl. Ex. D at 103:3-17, 104:1-106:11, 108:13-21.)

On June 27, 2012, Dixon filed a voluntary dismissal without prejudice of her claims.  (ECF No. 80.)

On June 28, 2012, the tender offer closed with 20,824,689 shares validly tendered or approximately 92.5% of Cost Plus outstanding shares of common stock.  (*See* Bruckner Decl. Ex. 7).  Cost Plus, BBBY and Merger Sub consummated the Merger the following day.  (*Id*.)

Pursuant to the Court's recommendation, Plaintiffs' Counsel and counsel for Defendants engaged in arm's-length discussions and negotiations regarding a potential resolution of the claims asserted in the Actions. (Bruckner Decl. ¶ 8.) On July 5, 2012, following these discussions and negotiations, Plaintiffs' Counsel and counsel for Defendants agreed to a settlement and executed a Memorandum of Understanding (the "MOU") containing the terms for the Parties' agreement in principle to resolve the Actions.  (*Id*.; ECF No. 87, Ex. A.)

On February 11, 2013, the Parties executed and on February 15, 2013 submitted to the Court the Stipulation.  (Bruckner Decl. Ex. 1, ECF No. 89.)

**B.     The Settlement**

Due to Plaintiffs' prosecution of the Actions, Defendants disseminated the Supplements, thereby conferring a substantial benefit on the Class.  Indeed, Defendants acknowledge that Dr. Ogurkiewicz's demand letter and intervention in the Federal Action were the primary cause of the Supplements.  (Stipulation at 5 [Bruckner Decl. Ex. 1].)  Plaintiffs acknowledge that they reviewed the Supplements prior to the Merger and deemed them an adequate basis for settling the Actions.  (*Id*. at 6.)  Under the terms of the Stipulation, the parties agreed to seek the certification of a non-opt-out class pursuant to Rules 23(a), 23(b)(1), and 23(b)(2) of the Federal Rules of Civil Procedure for purposes of this Settlement.  The proposed class includes any and all record and beneficial holders of Cost Plus stock, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs,

assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, who held any such Cost Plus stock at any time between and including May 9, 2012, and June 29, 2012, but excluding the specifically named Defendants (the "Class").  (*Id.* at 7.)

The Parties agreed to seek an entry of a judgment (the "Judgment") in the Form attached as Exhibit A to the Stipulation, filed with this Court on February 15, 2013: (a) unconditionally certifying the Class as defined above; (b) appointing Pomerantz Grossman Hufford Dahlstrom & Gross LLP as Lead Counsel for the Class; (c) approving the Settlement and Notice, and confirming them as being fair, reasonable, adequate, and in the best interests of the Class and the Company; (d) dismissing with prejudice the Federal Action and the Released Claims (as defined in the Stipulation) on the merits and with prejudice, and without costs, except as provided in the Stipulation; (e) settling, releasing, and permanently barring Defendants' Released Claims (as defined in the Stipulation) in favor of Plaintiffs, Plaintiffs' Counsel, Dixon, Dixon's counsel, and any member of the Class on behalf of Defendants; (f) settling, releasing, and permanently barring the Released Claims (as defined in the Stipulation) in favor of the Released Parties (as defined in the Stipulation) on behalf of Plaintiffs and any and all members of the Class, for themselves and for their spouses and former spouses, partners, successors, predecessors-in-interest, and assigns; (g) awarding Plaintiffs' Counsel attorneys' fees and expenses in the amount the Court finds to be fair and reasonable; and (h) approving Plaintiffs' Counsel application for an incentive fee for Dr. Ogurkiewicz.

The parties moved for preliminary approval of the Settlement on February 21, 2013. (ECF No. 90.)  On July 18, 2013, the Court entered an order preliminary approving the Settlement, and directing that notice of the Settlement be distributed to the Settlement Class (ECF No. 93) (the "Preliminary Approval Order").  The Court also preliminarily certified a non-opt-out Settlement Class under Rules 23(a), (b)(1), and (b)(2).

### III.    DR. OGURKIEWICZ AND POMERANTZ ARE ADEQUATE CLASS REPRESENTATIVES

Rule 23(a)(4) requires that the named Plaintiff and proposed Class Counsel be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In this case, the parties are not aware of any conflicts of interest between Dr. Ogurkiewicz and the absent Class members from the standpoint of assessing the fairness of the proposed Settlement. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The record shows that Dr. Ogurkiewicz and his counsel, Pomerantz, have vigorously prosecuted this action on behalf of the Class.

In the Intervention Motion hearing dated June 25, 2012, the Court noted:

> Okay. Well, I think at this point if there were a motion for appointment of lead plaintiff and lead counsel, I would have to go with Dr. Ogurkiewicz because he has—what is it?—the 45,000 shares that's been held for two years that allegedly amounts to a million dollars. The lead plaintiff analysis is really who has the largest financial interest, and I just don't think Ms. Dixon, with her smaller amount of shares, can meet that requirement. So obviously this motion is not before me and I would keep an open mind if it is before me, …

Bruckner Settlement Decl. Ex. D at 103:3-14.

To determine the adequacy of counsel, a court must consider the following: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). A court "may [also] consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Pomerantz is eminently qualified to serve as Lead Counsel. Pomerantz is the oldest firm in the United States specializing in shareholder litigation. (*See* Bruckner Settlement Decl. at Ex. A (Pomerantz résumé).) Since its founding seventy-six years ago, it has remained at the forefront of shareholder class action and derivative litigation. The firm's landmark victories are among the case law taught in securities courses in law schools nationwide. Pomerantz regularly litigates class action breach of fiduciary duty cases such as this in state and federal courts across

the country. Indeed, Pomerantz is currently in a lead counsel position or otherwise litigating a variety of other merger-related cases that implicate claims similar to those at issue here. The Firm's efforts have recovered over a billion dollars for its clients' benefit. In the last couple of years alone, Pomerantz obtained a $225 million class settlement, which represents the second largest recovery in a securities litigation involving the backdating of options, as well as one of the largest recoveries – $60 million – from an individual officer-defendant. *See In re Comverse Tech., Inc. Sec. Litig.*, 2010 U.S. Dist. LEXIS 63342, at *4 (E.D.N.Y. June 24, 2010). Pomerantz also obtained a $350 million class settlement, which is the largest cash settlement in the history of health insurance coverage litigation. *Am. Med. Assoc. v. United Healthcare Corp.*, 2009 U.S. Dist. LEXIS 45610, at *14 (S.D.N.Y. May 19, 2009).

The experience and success of Pomerantz in this type of litigation weighs in favor of appointing Plaintiffs' chosen counsel as Lead Counsel.

In view of these facts, Dr. Ogurkiewicz should be appointed Class Representative and his selected counsel, Pomerantz, should be appointed Lead Counsel.

## IV. **ARGUMENTS**

### A. **Notice to the Settlement Class Satisfied Due Process Requirements**

Before evaluating the merits of the Settlement itself, the Court must determine that notice was appropriate. Rule 23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Such notice to class members "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Here, notice was effectuated by timely dissemination informing the Class of the terms of the Settlement, explaining the claims and defenses in the lawsuit, providing instructions for Settlement Class members to object to the Settlement, providing detailed information about the final Settlement approval hearing, and providing contact information for Plaintiffs' Counsel, among other things.

### B. The Settlement Class Should be Certified

While the Court considered class certification conditionally at the preliminary approval stage, the Court also must finally certify the Class for purposes of settlement pursuant to Rules 23(b)(1) and (b)(2). For the reasons set forth below, certification under these Rules is appropriate, as otherwise Settlement Class members could be subjected to differing standards of conduct if claims of individual Settlement Class members were prosecuted on an individual basis, and because the relief sought in the Settlement is exclusively injunctive and declaratory.

#### 1. Class Certification Should Be Granted for Settlement Purposes Under Rule 23

Rule 23(a) enumerates four prerequisites for class certification, referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Each of these have been met.

#### 2. The Proposed Class Satisfies the Criteria of Rule 23(a)

##### a) *Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 664 (C.D. Cal. 2009). Here, the numerosity requirement is readily met because it is difficult or inconvenient to join all members of the proposed Class. *Id.*; *Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883, at *4 (C.D. Cal. July 16, 2009) (citing *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982)). There were thousands of Cost Plus shareholders owning over 22 million shares of stock. Thus, the numerosity requirement is undoubtedly met.

##### b) *Commonality*

"The existence of shared legal issues with divergent factual predicates is sufficient [to satisfy commonality], as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d at 1011, 1019 (9th Cir. 1998).

Here, Plaintiffs are asserting claims on behalf of all Cost Plus shareholders. Defendants acted on a common basis with respect to all shareholders. What proved to be the ultimate issue

in the case was whether Cost Plus adequately disclosed information to shareholders prior to the close of the tender offer. Defendants made uniform representations in the Recommendation Statement and omitted information in a similar fashion to all Cost Plus shareholders. Thus, whether Defendants' disclosures were adequate was a common issue for all shareholders.

### c) *Typicality*

Rule 23(a)(3) typicality is satisfied where the Plaintiffs' claims are "reasonably co-extensive with those of absent [C]lass [M]embers; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named [P]laintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations and quotation marks omitted). Thus, "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id.*

Here, Plaintiffs circumstances and the legal theory upon which their claims are based are identical to those of other Cost Plus shareholders. Plaintiffs' claims are typical because Defendants acted or failed to act in the same manner identically with respect to all shareholders.

### d) *Adequacy*

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In the Ninth Circuit, adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the Class. *See, e.g., Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020; *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003); *Wiener*, 255 F.R.D. at 665.

Here, Plaintiffs received the same consideration under the Merger and voted for or against the Merger based on the same disclosures as all other public shareholders, have precisely the same interest and incentive as any other shareholder to pursue claims related to the Merger, and are required to prove the same facts as any other shareholder to establish their

claims.  With respect to the adequacy of counsel, the Settlement Class is represented by law firms with national reputations who routinely litigate class actions.  Bruckner Settlement Decl. Ex. A.  Thus, the adequacy requirement is satisfied.

### 3. The Proposed Class Satisfies the Criteria of Rule 23(b)

Here, Plaintiffs seek to certify a Settlement Class pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2).  The Settlement Class satisfies Rule 23(b)(1) because there is a significant risk that if individual cases were brought on behalf of shareholders, Cost Plus would have to make different disclosures or the disclosures of the same facts worded differently, or have to make no additional disclosures at all.  This could expose Cost Plus to different standards of conduct with respect to a group to which Cost Plus has an obligation, under applicable securities laws and regulations, to treat uniformly.

The Settlement Class is also certifiable under Rule 23(b)(2) because the settlement relief is exclusively injunctive or declaratory, and Defendants acted in a uniform fashion as to all Settlement Class members.  First, the Actions resulted in Cost Plus making the Supplements to the Recommendation Statement in advance of the closing of the tender offer and the Merger, and as such is declaratory or injunctive in nature.  Further, Cost Plus acted or refused to act, on grounds generally applicable to the Settlement Class.  Cost Plus' disclosures were filed with the SEC and were provided to all shareholders.  By filing the Supplements instigated by Plaintiffs' Counsel, Cost Plus was acting in a uniform manner with respect to providing information to the shareholders.

## V. FINAL SETTLEMENT APPROVAL IS APPROPRIATE

### A. Settlement and Class Action Approval Process

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy ... favors settlements, particularly where complex class

action litigation is concerned"); *see also* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) (gathering cases). The traditional means for handling claims like those at issue here – individual litigation – would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Class Members, would be impracticable. The proposed Settlement, therefore, is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See Manual for Complex Liti*gation (*Fourth*) §§ 21.632-34 (4th ed. 2013). This procedure, used by courts in this Circuit and endorsed by class action commentator Prof. Herbert Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* 4 Conte & Newberg, at §§ 11.22, *et seq.* Two of the three steps have already been completed here. First, in granting preliminary approval on July 18, 2013, the Court conducted a preliminary evaluation of the Settlement and determined it to be within the range of reasonableness. The Court also determined that the proposed Notice program was appropriate.

Second, notice was disseminated to all affected Class Members. As discussed above, the Notice has been sent to Class Members in accordance with the Preliminary Approval Order. The third step is the final approval hearing and final approval of the Settlement – the issue now before the Court.

## B.     The Settlement Is Presumed Fair, Adequate, and Reasonable

The Settlement was encouraged by the Court. In the June 25, 2012 Intervention Motion hearing, the Court suggested that the case be settled since the Class already received benefits:

> So I would love for this just to resolve, understanding that this is the only benefit that's going to be conferred to the class ….

> … All I'm telling you is this is how I see this case. I think there is a settlement here where we can wrap this up and end this now. Let the merger go forward.

Bruckner Settlement Decl. Ex. D at 105:24-106:1; 108:18-19.

When considering a motion for final approval of a class action settlement under Rule 23, the court's inquiry is whether the settlement is "fair, adequate, and reasonable." *City of Seattle*, 955 F.2d at 1276. "Ultimately, the district court's determination is nothing more than an 'amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir.1982). The decision to approve or reject a proposed settlement is committed to the court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985); *City of Seattle*, 955 F.2d at 1276.

In affirming the settlement approved by the trial court in *City of Seattle*, the Ninth Circuit noted it "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." 955 F.2d at 1291 (citation and quotation marks omitted). The district court's ultimate determination "will involve a balancing of several factors," which may include:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; ... and the reaction of the class members to the proposed settlement.

*Id.* (quoting *Officers for Justice,* 688 F.2d at 625).

A court begins its analysis with a presumption that a class settlement is fair and should be approved if it is the product of arm's-length negotiations conducted by capable counsel with

extensive experience in complex class action litigation. *See M. Berenson Co. v. Faneuil Hall Marketplace Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987). Here, the Stipulation was the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of this case in particular. (Bruckner Decl. ¶ 8.) Counsel for both parties are experienced in the litigation, certification, trial, and settlement of nationwide class actions similar to this case. In negotiating the Settlement, Plaintiffs' Counsel had the benefit of years of experience combined with their familiarity with the facts of this case. Plaintiffs' Counsel supports the resulting settlement as fair and as providing reasonable relief to the Class Members.

### C. All of the Relevant Factors Support Final Approval of the Settlement

#### 1. The Value of the Settlement, and the Substantial Benefits it Provides to Class Members, Support Final Approval

The Supplements provided shareholders with material information concerning the Board's consideration of how and why the final terms of the Merger were structured. At the July 18, 2013 Preliminary Approval hearing, the Court recognized that the Supplements caused by Plaintiffs' Counsel provided "**a benefit to the Class**" and the Court urged the parties to consider a settlement on the basis of this benefit. (Bruckner Settlement Decl. Ex. D at 24:20-22.)

As a direct result of Plaintiffs Counsel's litigation efforts, Defendants made additional disclosures, including, *inter alia*, (i) that PJSC's *Analysis of Selected Publicly Traded Comparable Companies* implied a per share value for Cost Plus shares of up to $51.68 per share; (ii) that PJSC's *Analysis of Selected Precedent Transactions* implied a per share value of up to $71.83 per share, (iii) that BBY had expressed its expectation to retain senior Cost Plus management, and (iv) that PJSC's *Discounted Cash Flow Analysis* assumed no future benefit related to any NOL carry-forward. At the June 25, 2012 Intervention Motion hearing, the Court recognized that these were made as a result of the Actions: "Yea. I mean, you did make some

disclosures, and I would very strongly infer that you did it as a result of these lawsuits." (Bruckner Settlement Decl. Ex. D at 110:19-21.)

These Supplements provided Cost Plus shareholders with a more fulsome picture of the facts and circumstances surrounding the Merger.

### 2. The Risks Inherent in Continued Litigation Support Final Approval

The Supplements provided shareholders with relief sought by the Actions, prior to the close of the tender offer and the Merger. After the Supplements were provided, the Court encouraged the Plaintiffs to settle the Actions. In the Intervention Motion hearing dated June 25, 2012, the Court posited: "I really do sincerely believe that this is really a state court case because of the state claims that really are only—the only ones surviving." (Bruckner Settlement Decl. Ex. D at 98:18-31.)

### 3. The Fact that Discovery and Investigation Were Completed Before Settlement Favors Final Approval

By the time the parties reached the Settlement, they had compiled sufficient information and conducted extensive analysis to assess the strengths and weakness of their respective cases. Class Counsel had sufficient legal and factual bases to make a thorough appraisal of the adequacy of the Settlement. Based on their extensive investigation of the factual and legal bases for Plaintiffs' claims and as encouraged by the Court, Class Counsel recognizes that the Settlement is fair, reasonable, and adequate. Bruckner Settlement Decl. ¶ 27.

### 4. The Terms and Conditions of the Proposed Settlement Favor Final Approval

In this case, Plaintiffs caused a substantial benefit for Company shareholders. Indeed, the right of a shareholder to make an informed decision on a merger is *the* sacrosanct principle of the shareholder franchise. This proposition forms the bedrock of the duty imposed on corporations and their directors to disclose to stockholders all material information when seeking shareholder action. Without full knowledge of all material aspects of the matter on which the action is sought, a shareholder's role is meaningless.

Through the litigation here, Plaintiffs protected the rights of all Cost Plus shareholders. Armed with the information provided through the efforts of Plaintiffs, Cost Plus shareholders approved the Merger, and tendered their shares on a fully informed basis.

### 5. The Recommendation of Experienced Class Counsel Supports Final Approval

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat Rural Telecomms. Corp. v. DIRECTTV, Inc.,* 221 F.R.D. 528 (C.D. Cal. 2004). Class Counsel in this case, experienced and skilled in class action litigation, support the Settlement as fair, reasonable, and adequate, and in the best interests of the Class as a whole.

Plaintiffs' Counsel spent significant time analyzing Defendants' public filings (including the Merger Agreement and the Recommendation Statement); researching applicable law; preparing pleadings and demand letters, pursuing and obtaining discovery, and reviewing and analyzing documents obtained during discovery to among other things determine the adequacy of disclosures both independently and in conjunction with retained financial experts. Bruckner Settlement Decl. Ex. A. As a result, Plaintiffs' counsel had a full and complete understanding of the merits of both the breach of fiduciary duty and disclosure claims raised in the Actions.

Because Plaintiffs' Counsel gained a full appreciation of the merits of the Actions, including the risks in establishing liability and especially in light of the Court's indications, Plaintiffs' Counsel determined that the best result for the shareholders was to settle the action on the basis of Defendants' additional disclosures so that shareholders could make a fully-informed decision regarding the Merger.

### 6. The Expense and Likely Duration of Litigation in the Absence of a Settlement Supports Final Approval

Another factor courts consider in assessing the fairness of settlements is the complexity, expense, and likely duration of the litigation had a settlement not been reached. *City of Seattle,* 955 F.2d at 1291. In applying this factor, the Court must weigh the benefits of the Settlement

against the expense and delay involved in achieving an equivalent or more favorable result at trial.  *See Young v. Katz,* 447 F.2d 431, 434 (5th Cir. 1971).

As the Court succinctly stated at the Preliminary Approval hearing, in this case, "the benefit has already been conferred to the class.  So it's really just coming down to fees." (Bruckner Settlement Decl. Ex. D at 24.)

### 7. The Presence of Good Faith and the Absence of Collusion Favors Final Approval

Courts should also consider the presence of good faith and the absence of collusion on the part of the settling parties.  4 Conte & Newberg, at § 11.43.  There is no collusion or bad faith here, nor any allegations thereof. Furthermore, courts recognize that arm's-length settlements negotiated by competent counsel are prima facie evidence of fair settlements.  As the Supreme Court has held, "[o]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arm's-length bargaining, ..."  *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 852 (1999); *see also Berenson,* 671 F. Supp. at 822 (holding that where "a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair").

### 8. Class Members' Positive Reaction Supports Final Approval

The Settlement received a positive response from the Class.  The reaction of class members to a proposed settlement is an important factor in determining whether a settlement is fair, adequate, and reasonable.  *City of Seattle,* 955 F.2d at 1291; *Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 802 (3d. Cir. 1974).  A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.  *See, e.g., Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1178 (9th Cir. 1977).  Indeed, a court can approve a class action settlement as fair, adequate, and reasonable even over the objections of a significant percentage of class members.  *See Class Plaintiffs,* 955 F.2d at 1291-96; *Bryan,* 494 F.2d at 803 ("While the proportion of the class opposed to a settlement is one factor to be

considered in assessing its fairness,... a settlement is not unfair or unreasonable simply because a large number of class members oppose it").

Here, not a single Class Member has objected to the Settlement, or any of its terms. Only one letter was received from a purported shareholder, Mr. Robert Helton, who merely inquired regarding whether or not merger consideration had been distributed to shareholders, and did not express any objections as to the Settlement. Bruckner Settlement Decl. ¶ 36. The absence of any objections to the Settlement both indicate the broad, class-wide support for the Settlement and support its approval. Moreover, Dr. Ogurkiewicz, who owns more than 45,000 shares of Cost Plus stock and intiaily sought to enjoin the Merger submitted an affidavit in support of the Settlement.[5]

## VI.    PLAINTIFFS' COUNSEL IS ENTITLED TO THE REQUESTED AWARD OF ATTORNEYS' FEES AND EXPENSES

Where, as here, the relief obtained is difficult to value,[6] a percentage "common fund" fee award is inappropriate because there is no "fund" to which a percentage may be applied. *Home Placement Serv., Inc. v. Providence Journal Co.*, 819 F.2d 1199 (1st Cir. 1987); *see also Staton*, 327 F. 3d at 973-74. Consequently, the lodestar method applies.

The lodestar method provides courts an objective basis upon which to determine the value of the services provided by counsel. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The

---

[5] Bruckner Settlement Decl. Ex. C.

[6] While the law of this circuit is somewhat underdeveloped with regard to valuing supplemental disclosures in the context of a fee application, the courts of Delaware regularly consider proposed settlements similar to the Action. The Delaware Court of Chancery "has often awarded fees of approximately $400,000 to $500,000 for one or two meaningful disclosures, such as previously withheld projections or undisclosed conflicts faced by fiduciaries or their advisors." *In re Sauer-Danfoss Inc. Shareholders Litig.*, 65 A.3d 1116, 1136-37 (Del. Ch. 2011). Here, as discussed above, Plaintiffs caused the disclosure of both additional management projections and information regarding potential conflicts of interest.

calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.")  Multiplying the number of hours counsel worked by a reasonable hourly rate establishes the lodestar.  *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999).  After examining the time and labor required, the Court may apply a multiplier to the lodestar in light of certain factors, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount at controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1995).

## A.     Plaintiff Counsel's Lodestar Greatly Exceeds the Fees Sought Herein

Plaintiffs' Counsel's lodestar through the date of the Preliminary Injunction hearing alone was $688,451.75, yet they seek an unopposed award of $375,000.[7]  Given that the amount of fees sought is far less than the lodestar actually incurred, this amounts to a *negative* lodestar multiplier being sought by Plaintiffs' Counsel; thus, there is a strong presumption that the fee award requested is reasonable.  *See Jefferson v. Chase Home Finance*, 2009 WL 2051424, at *4 (N.D. Cal. Jul. 10, 2009) (granting fee award sought because, *inter alia*, "the figure sought is well under the Plaintiffs' counsel's lodestar"); *Young v. Polo Retailer, LLC*, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("This so-called negative multiplier suggests that, . . . the fees sought here are reasonable based on the time and effort expended by plaintiff's counsel").  *See also Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (the court determined that a negative multiplier "suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel"); *Gong-Chun v. Aetna Inc.,*

---

[7] Plaintiffs' Counsel's cut-off period for lodestar was June 25, 2012, the date of the Preliminary Injunction Hearing.  Additional hours expended by Plaintiffs' counsel after this date has not been included for purposes of lodestar.  Affidavits attesting to Plaintiffs' Counsel's time and expenses are attached hereto as Exhibit A to the Bruckner Settlement Declaration.

2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (the court noted "Class Counsel's total attorneys' fee request is $443,424.72. This implies a negative multiplier of .79 ($443,424.72 /$556,216), which suggests that the negotiated fee award is reasonable").

Moreover, the fee requested is well within the range of fees awarded by Federal District Courts throught the country in similar actions involving disclosures. *See In re Schering-Plough/Merck Merger Litig.,* 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010) (awarding $3,500,000 fee award in a disclosure-only settlement in the context of a merger transaction, representing approximately 2.18 times plaintiff counsel's overall lodestar and an average hourly rate of approximately $1,294 per hour); *In re Medco/ Express Scripts Merger Litigation*,[8] No. 2:11-vc-4211 (D.N.J. April 4, 2012) (awarding $7,000,000 fee award in a settlement for disclosures and non-monetary alterations to the merger agreement in the context of a merger transaction, representing approximately 2.22 times plaintiffs' counsel's overall lodestar); *In re ICX Techs., Inc. S'holder Class Action*,[9] No. 1:10-cv-941 (E.D. Va. Jul. 8, 2011) (awarding $925,000.00 in fees and expenses for additional disclosures and fifteen day extension of appraisal rights); *Nichting v. DPL, Inc.*,[10] No. 3:11-cv-141 (S.D. Ohio Feb. 24, 2012) (awarding $700,000 for disclosure-only settlement in the context of a merger transaction); *Collier v. Brightpoint, INC. et al.*,[11] No. 1:12-cv-01016 (S.D. Ind. May 1, 2013) (awarding $600,000 in a disclosure only settlement in the context of a merger transaction); *Denney v. Wallace et. al.*, No. 2:10-cv-01154 (W.D. Pa. Aug 31, 2010)[12] (awarding $475,000 in a disclosure only settlement in the context of a merger transaction).[13]

---

[8] Bruckner Settlement Decl. Ex. E.

[9] *Id.* Ex. F.

[10] *Id.* Ex. G.

[11] *Id*. Ex. H.

[12] *Id*. Ex. I.

In addition, the unreimbursed costs of counsel in the total amount of $46,965.07, which were expended in support of the effort to achieve the benefit to the Class, are included in the request for $375,000. Those expenses included expert fees, computer research, telephone charges, court fees, witness fees, deposition costs and transcipts, and those associated with appearing at court hearings in Federal District Court in San Jose, California and in Superior Court in Alameda County, California. When Plaintiffs' Counsel's expenses of $46,865.07 are deducted from the requested fee of $375,000, the attorneys' fee request represents negative multiplier of approximately 0.48 times Plaintiffs' Counsel's lodestar through the date of the Preliminary Injunction hearing.[14]

Should the Court approve Plaintiffs' counsel application for attorneys' fees and expenses, Pomerantz has committed to providing the Faruqi & Faruqi LLP firm with 1/3 of the net fee award. Pomerantz will allocate portions of the fee to all other Plaintiffs' counsel in the Actions in accordance with each firm's proportion of lodestar and contribution to the litigation. Moreover, the instant fee application shall be the sole application for reimbursement of attorneys' fees and expenses in the Actions.

### B. Other Relevant Factors Support the Fee Award

*The Time and Labor Required:* The over 1,298 hours Plaintiffs' Counsel collectively expended on this case were reasonably spent in light of the extensive litigation involved prior to reaching a Settlement agreement. Plaintiffs' Counsel: (1) investigated and filed this action; (2) reviewed thousands of pages of documents; (3) filed numerous pleadings; (4) prepared and argued in hearings; (5) moved for Court approval of class notice and contact information from Defendants; (6) negotiated and settled the case, and documented the Settlement; and (7) successfully moved for preliminary approval of the Settlement.

*The Novelty and Difficulty of the Questions Involved:* In this litigation, the path to a final judgment on Plaintiffs' claims would have been lengthy and expensive. In a case

---

[14] The amounts of Plaintiffs' Counsel's lodestar and expenses are listed in the affidavits of Plaintiffs' Counsel, submitted as Exhibit A to the Bruckner Settlement Declaration.

involving a merger valued at approximately $495 million, litigation of the breach of fiduciary duty claims and federal securities claims to conclusion would have involved expensive economic evaluations by investment bankers and other experts retained by both sides, considerable fact and expert discovery, and a complex, lengthy trial.

*The Requisite Legal Skill Necessary:* Plaintiffs' Counsel demonstrated legal skill in litigating to a successful conclusion this class action. Plaintiffs' Counsel successfully briefed and argued a motion for intervention and motion for class certification, and then obtained disclosures from the Defendants which the Court characterized as beneficial.

*The Customary Fee:* The Ninth Circuit has endorsed and approved attorneys' fee awards two or three times higher than the actual lodestar amounts. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1052-54 (9th Cir. 2002) (approving multiplier of 3.65 and citing a survey of class settlements from 1996-2001 indicating that most multipliers range from 1.0 to 4.0); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) (recognizing that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"). Here, Class Counsel does not seek a multiplier, but instead a *divider*. In light of the range of multipliers commonly approved by courts within the Ninth Circuit, Plaintiffs' Counsel's fee request is eminently reasonable.

*Whether the Fee is Contingent:* Plaintiffs' Counsel undertook this class action on a purely contingent basis, at risk of total loss, with no assurance of recovering expenses or attorneys' fees. Despite this lack of assurance, Plaintiffs' Counsel expended considerable time and resources to prosecute the case successfully on behalf of the Class.

*The Results Obtained:* The Class Members' positive response to the Settlement confirms that Plaintiffs' Counsel achieved a satisfactory result on their behalf. Class Members obtained material information enabling them to make a fully informed decision prior to the tender offer.

*The Experience, Reputation, and Ability of the Attorneys:* Plaintiffs' Counsel's skill and experience were critical to success in this case. Plaintiffs' Counsel has successfully prosecuted many class action cases on behalf of shareholders. Plaintiffs' Counsel's skills in developing

evidence of liability, damages, and obtaining Supplements were key to reaching a favorable settlement.

In light of the quality of the representation provided by Plaintiffs' Counsel, the substantial benefit obtained in the Settlement, the complexity of the case, and the risk of nonpayment, the negative multiplier on Plaintiffs' Counsel's lodestar is reasonable.

## VII.     THE INCENTIVE AWARD SHOULD BE APPROVED

The Ninth Circuit has recognized that "[i]ncentive awards are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Such awards are discretionary, . . . and are intended to compensate class representatives for work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action." *Id.* "Courts have generally found that $5,000 incentive payments are reasonable." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008); *see also Garner v. State Farm Mutual Auto. Ins. Co.*, 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class.")

The payment of $2,800 to Dr. Ogurkiewicz is intended to recognize the time and effort he expended on behalf of the Class. Dr. Ogurkiewicz cut short his family vacation to attend the June 25, 2012 hearing in California. He has demonstrated his strong commitment to the Class by initiating this litigation, providing information to Class Counsel, producing relevant documents, monitoring the progress of the litigation, consulting with Class Counsel regarding litigation decisions, and passing up on work as an expert witness in order to attend hearings and be available for this litigation.

The dedication that he has shown to this case and to the remaining members of the Class meets the standard established in the Ninth Circuit for the award of incentive payments. Accordingly, the requested payment to Dr. Ogurkiewicz is appropriate and justified as part of the overall Settlement, in light of his service to and risks taken on behalf of the Class.

**VIII. CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant: (1) approval of appointment of Dr. Ogurkiewicz as Class Representative and Pomerantz as Lead Counsel; (2) final approval of the Settlement of this class action; (3) final class certification of the settlement Class conditionally certified in this Court's Preliminary Approval Order; (4) approval of an award of Plaintiffs' Counsel's fees and expenses in the aggregate amount of $375,000; and (5) approval of an application for an incentive fee for Dr. Ogurkiewicz of $2,800, to be paid from the award of attorneys fees.

DATED: November 21, 2013        Respectfully submitted,

**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**

By: ___*/s/ Gustavo F. Bruckner*___
       Gustavo F. Bruckner

Gustavo F. Bruckner *(admitted pro hac vice)*
Samuel J. Adams
**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**
600 Third Avenue , 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: gfbruckner@pomlaw.com
       sjadams@pomlaw.com

*Counsel for Plaintiff-Intervenor and Plaintiff Dr. Gary Ogurkiewicz*

Nicole Lavallee
Todd A. Seaver
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile (415) 433-6282
Email: nlavallee@bermandevalerio.com
       tseaver@bermandevalerio.com

*Local Counsel for Plaintiff-Intervenor and Plaintiff Dr. Gary Ogurkiewicz*

## ATTESTATION

I, Nicole Lavallee, am the ECF user whose ID and password are being used to file the foregoing document. In compliance with Local Order 5-1(i), I hereby attest that Gustavo F. Bruckner has concurred in this filing and that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) with this efiled document.

_/s/ Nicole Lavallee_
Nicole Lavallee

[12-cv-02721-LHK] PLFS' MOTION FOR ORDER GRANTING: (1) APPROVAL OF APPOINTMENT OF CLASS REPRESENTATIVE; (2) FINAL APPROVAL OF PROPOSED SETTLEMENT AND CLASS CERTIFICATION; (3) APPROVAL OF AWARD OF ATTORNEYS' FEES

25